917 So.2d 1134 (2005)
Shanna LENNARD
v.
Judy Lynn CHAMPAIGN, The United States Automobile Association Insurance Company.
No. 05-CA-174.
Court of Appeal of Louisiana, Fifth Circuit.
November 29, 2005.
Donald F. de Boisblanc, J. Rand Smith, Jr., Attorneys at Law, New Orleans, Louisiana, for Plaintiff/Appellant.
Peter J. Wanek, Lynda A. Tafaro, McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel, Metairie, Louisiana, for Defendant/Appellee.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Plaintiff, Shana Lennard, appeals the trial court's granting of a summary judgment in favor of defendants, Judy Champaign and United Services Automobile Association Insurance Company. For the following reasons, we affirm.
On September 19, 2002, plaintiff-appellant, Shana Lennard ("Lennard"), was involved in an automobile accident with a vehicle driven by defendant-appellee, Judy Champaign ("Champaign"). The accident occurred on a private street in Jefferson Parish named Coolidge Road, which is owned by the Ochsner Clinic Foundation and serves as a conduit for Ochsner doctors and employees to access clinic parking lots on the campus.
On February 20, 2003, Lennard filed suit against Champaign and her insurer,[1] *1135 alleging that Champaign had caused the collision of September 19, 2002 by improperly making a left-hand turn from the far right-hand lane of Coolidge Road and "cutting across the path of petitioner in the middle lane." On January 23, 2004, Lennard added Ochsner Clinic Foundation as a defendant to the proceedings, alleging that the accident was caused, in part, by false or misleading designation for the direction of traffic on Coolidge Road.
On October 5, 2004, Champaign and her insurer filed a Motion For Summary Judgment, alleging that, at the time of the accident, Lennard had been traveling northbound in a lane that was clearly marked for southbound traffic and, therefore, was solely responsible for the accident at issue. On November 2, 2004, Ochsner filed a Motion For Summary Judgment arguing identical grounds.
On November 5, 2004, the trial court held a hearing on Champaign's Motion For Summary Judgment and, thereafter, granted the motion on November 15, 2004 upon finding that there was no genuine issue of material fact regarding the liability of Champaign or her insurer. On November 30, 2004, Lennard timely filed the present appeal.

LAW AND ANALYSIS
On appeal, Lennard's lone assignment is that the trial court erred in granting summary judgment in light of what she contends to be issues of material fact regarding the actions of both parties in accessing the center lane of Coolidge Road prior to the accident.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.[2] An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact remaining to be decided, and whether the appellant is entitled to judgment as a matter of law.[3] The appellate court must consider whether the summary judgment is appropriate under the circumstances of the case.[4] There must be a "genuine" or "triable" issue on which reasonable persons could disagree.[5] Under the amended version of LSA-C.C.P. art. 966, the burden of proof remains on the mover to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." A material fact is one that would matter on the trial of the merits.[6]
The record before us shows that Coolidge Road exists as a three-lane roadway that extends north-south between Jefferson Highway and a series of three gates in front of one of Ochsner's campus parking lots. The far right lane of Coolidge Road approaching the Ochsner campus is designated exclusively for south-north travel, as indicated by arrow markings and yellow lines. The center and far left lanes of Coolidge Road are marked for travel from north-south exclusively, as indicated by arrow signage on the lanes themselves.
*1136 In the present case, there is no dispute regarding the position of the vehicles immediately before and at the time the accident between the parties occurred. Before the accident, Champaign's car was traveling from Jefferson Highway toward Ochsner in the far right-hand lane while Lennard's car followed in the same lane. Lennard then entered the center lane of Coolidge Road, against the marked southbound direction of the lane. Subsequently, Champaign executed a left-hand turn from the far right-hand lane while attempting to enter a parking lot located in front of Ochsner's dialysis center. At that time, Lennard's car struck Champaign's car. At trial, Lennard argued that she was properly in the center lane at the time of the accident on the basis that Ochsner had a policy in place that allowed traffic flow to change direction in the center lane depending on the time of day. In her previous deposition testimony, however, Lennard admitted that she had never seen a written policy regarding lane usage for entrance and exit to the Coolidge parking lot prior to the accident. Lennard further stated that, when a motorist drives from the Jefferson Highway entrance, there is nothing indicating that a driver could use the middle lane and go in the opposite direction of the arrow. Lennard indicated, however, that there was a multidirectional arrow near the gated area.
In deposition testimony entered into evidence, Norris Yarbrough, Ochsner's director of safety, security, and transportation, testified regarding the flow of traffic on Coolidge Road. Yarbrough stated that the center lane of Coolidge Road was only reversible at the entrance to the gated area, which is in front of the parking lot at the end of Coolidge Road. Before 12:30 p.m., those entering the parking lot were allowed to access the gates through the center lane; however at 12:30 p.m. the gates "reverse" allowing for two lanes southbound toward Jefferson Highway for those workers who are leaving their shift at Ochsner. Yarbrough further indicated that, at the precise area where the accident occurred, Lennard was clearly traveling against the signage, which indicated a southbound only flow of traffic. Yarbrough was not aware of any instances in which Ochsner's policy has been to use the center lane of Coolidge Road in a manner inconsistent with the way the road is marked.
After a review of the record, we find that the trial court was correct in its finding of Lennard's liability in causing the accident. Specifically, we find that the evidence presented in support of the Motion For Summary Judgment demonstrates that Lennard was clearly at fault for proceeding down the center lane of travel on Coolidge Road, which was marked for passage exclusively in the opposite direction at that point. Lennard further argues on appeal, however, that regardless of Ochsner's policy regarding travel in the center lane, the trial court erred in finding that there was no genuine issue of material fact regarding whether Champaign violated her duty as a motorist making a left-hand turn.
LSA-R.S. 32:104, in relevant part, provides:
A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
As noted by the court in Gryder v. Jackson[7]:

*1137 Judicial interpretations of LSA-R.S. 32:104(A) have made it clear that a left-turning motorist has a strong duty of care. The duty includes properly signaling an intention to turn left and keeping a proper lookout for both oncoming and over-taking traffic in order to ascertain that the left turn can be made with reasonable safety. Agency Rent-A-Car, Inc. v. Hamm, 401 So.2d 1259 (La.App. 1st Cir.1981). The left-turning motorist is required not only to look to the left before turning, but has a duty to see what should be observable. Hollier v. Gilder, 306 So.2d 475 (La.App. 3d Cir. 1975). If the driver of a left-turning vehicle signals a left-hand turn, the left-turning driver only fulfills one-half of the requirement for making such maneuver for it remains incumbent upon him to look to his rear to see if the left-hand lane is clear before beginning his left turn. Kilpatrick v. Alliance Casualty and Reinsurance Co., 95-17 (La. App. 3d Cir.7/5/95), 663 So.2d 62.
Lennard points to the following deposition testimony of Champaign to bolster the argument that Champaign breached her duty as a motorist making a left hand turn.
COUNSEL:
In what manner did you look prior to the accident? Did you utilize your rear-view mirror, or did you turn your head?
CHAMPAIGN:
I don't remember what I did exactly. I checked the rear-view mirror periodically. I knew there were cars behind me. It is my habit to signal. I turned. I don't know if I looked. I assume I looked. I don't know.
Champaign asserts, however, that any duty would have applied in regard to Lennard only if Lennard was a passing motorist lawfully traveling in the center lane. Champaign further argues that Lennard was solely at fault for the accident because she breached her duty as a "following motorist." We agree.
In Coleman v. Parret,[8] this Court observed:
The driver of the following or overtaking vehicle must be alert to the actions of the motorists preceding him on the highway. Kilpatrick v. Alliance Cas. and Reinsurance Co., 663 So.2d 62 (La.App. 3 Cir.1995). That driver (of an overtaking or passing vehicle) has the duty to ascertain before attempting to pass a preceding vehicle that from all the circumstances of traffic, lay of the land, and conditions of the roadway, the passing can be completed with safety. Palmieri v. Frierson, 288 So.2d 620 (La.1974); Kilpatrick, supra.

. . . .
In judging whether a left turn can be made in safety, the turning motorist has the right to assume that a following motorist will observe all the duties imposed upon him by law and common sense. Keating v. Holston's Ambulance Service, Inc., 546 So.2d 919, [sic] (La.App. 3 Cir.1989); Budget Rent-A-Car of New Orleans v. Gradnigo, 611 So.2d 147 (La.App. 3 Cir.1992).
(Emphasis added.)
After a review of the record, we find that, under the specific facts of the case, Champaign had the right to assume that a following motorist would not have crossed a clearly marked solid traffic line to travel against the flow of traffic. This, when coupled with our previous finding of Lennard's *1138 liability, leads us to the conclusion that Champaign's summary judgment was properly granted.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] Lennard originally named "United States Automobile Association Insurance Company" as Champaign's insurer but later amended the petition to name United Services Automobile Association as the proper defendant.
[2] Bua v. Dressel, 96-79 (La.App. 5 Cir. 5/28/96), 675 So.2d 1191, writ denied, 96-1598 (La.9/27/96), 679 So.2d 1348 (citing Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180).
[3] Tassin v. City of Westwego, 95-307 (La.App. 5 Cir. 12/13/95), 665 So.2d 1272.
[4] Rowley v. Loupe, 96-918 (La.App. 5 Cir. 4/9/97), 694 So.2d 1006.
[5] Id. at 1008.
[6] J.W. Rombach, Inc. v. Parish of Jefferson, 95-829 (La.App. 5 Cir. 2/14/96), 670 So.2d 1305.
[7] 32,037 (La.App. 2 Cir. 6/16/99), 739 So.2d 246, 249, writ denied, 750 So.2d 986 (La. 1999).
[8] 98-121 (La.App. 5 Cir. 7/28/98), 716 So.2d 463, 466.