STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-1532

MARK REED, ET AL.

VERSUS

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., ET AL.

**************
APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, DOCKET NO. 04-C-2134-B
HONORABLE ELLIS J. DAIGLE

**************
**SYLVIA R. COOKS**
**JUDGE**
**************

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Marc T. Amy, Judges.

**REVERSED.**

Joseph F. Gaar, Jr.
Jason M. Welborn
Attorneys at Law
P.O. Box 2053
Lafayette, Louisiana 70502
(337) 233-3185
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Mark Reed and Riki Reed

Jimmy L. Dauzat
Attorney at Law
P.O. Box 1450
505 South Court Street
Opelousas, Louisiana 70571-1450
COUNSEL FOR DEFENDANTS/APPELLANTS:
    State Farm Mutual Automobile Insurance Company
    Lena Jannise

**COOKS, Judge.**

## STATEMENT OF THE CASE

Mark and Riki Reed, filed suit against Lena Jannise, and her insurer, State Farm Mutual Automobile Insurance Company (State Farm), for injuries sustained by Mr. Reed when he was struck by Mrs. Jannise's automobile while riding a dirt bike. The jury found the parties equally at fault and awarded Mr. Reed $58,124.02 in past medical expenses, $15,000.00 in general damages and $1,000.00 for lost wages. The jury awarded nothing for future pain and suffering or future medical expenses. Both parties appealed. For the reasons assigned below, we find Mrs. Jannise was not negligent is causing this accident and, therefore, we reverse the judgment of the trial court.

## STATEMENT OF THE FACTS

On April 10, 2004, at approximately 10:55 p.m., Mrs. Jannise was driving her Toyota Avalon automobile in a northerly direction on the I-49 service road. She was on her way home from Kozy's Lounge, a small country bar located near the outskirts of Opelousas. Mrs. Jannise is seventy years old and a widow. She went to Kozy's Lounge at the urging of her son to listen to his Cajun band and visit with friends. Mrs. Jannise's home is located off the I-49 service road, a few miles north of Opelousas, on property which is fairly isolated and wooded. There are no street lights in the area and no commercial developments nearby. Her house is set back about 150 feet from the service road and her son-in-law lives in a home on her property. Mrs. Jannise's gravel driveway crosses over an open ditch which, at the time of the accident, was dry and grassy. The distance from the bottom of the ditch to the top of her driveway is approximately four and a half feet. The shoulder of the road is not flat, but slopes downward toward the center of the ditch.

2

That same evening Mark Reed, and a friend, Adam Thibodeaux, were riding small "pit" dirt bikes in the woods to the west of I-49. A pit bike is a five and a half horsepower two-wheel motorcycle, designed for children ages eight to twelve. The weight capacity is about 120 pounds. Mr. Reed is approximately six feet tall and weighs 210 pounds. Dirt bikes are not designed for on-road use and are not equipped with headlights. Illumination at night for the driver is provided by a LED "frog lamp" which Mr. Reed was wearing. Mr. Reed has been riding motorcycles and ATVs since he was four years old. He is a salesman for First Turn, working on commission, selling motorcycles, ATVs, utility vehicles, lawn mowers, trimmers and accessories. He is an experienced cyclist and rides for pleasure during the spring and summer months.

On the evening of the accident, the weather was clear and dry. The two men had been riding on small trails and across empty fields. At some point during the evening, Mr. Reed noticed his bike was leaking oil. He decided to switch bikes with Mr. Thibodeaux, ride to retrieve his truck, which was parked in his employer's lot, and then drive back to pick up the disabled dirt bike. He was riding the dirt bike in a southerly direction on the grassy area adjacent to the I-49 service road. As he approached Mrs. Jannise's driveway, he observed her car coming toward him. There were no other cars on the road at the time. Mrs. Jannise contends she activated her blinker and began to slow down to execute the left-turn onto her driveway. Mr. Reed asserts she did not have her turn signal on. Mrs. Jannise turned left just as Mr. Reed was crossing her driveway. She struck him on the left leg, crushing the bones in his leg and causing him to fly onto the hood of her car. He fell off of the hood onto the side of her gravel driveway. Mrs. Jannise panicked and drove to her son-in-law's home to get help. A short time later an ambulance arrived and transported Mr. Reed

3

to Opelousas General Hospital. The jury found each party was fifty percent at fault in causing the accident. Mrs. Jannise appeals asserting the following assignments of error:

(1) The jury committed error in its finding of negligence on the part of Lena Jannise.

(2) The jury instructions given by the trial court regarding the law applicable to a left-turning motorist were erroneous.

(3) The trial court erred in failing to instruct the jury that the defendant had a right to assume that her pathway was safe for travel and she had no duty to guard against an unusual or unexpected obstacle which she had no reason to anticipate and which was difficult to discover.

Mr. Reed appeals the judgment asserting the following assignments of error.

(1) The jury committed error in its finding of 50% negligence on the part of Mr. Reed.

(2) The jury committed error in awarding only $15,000.00 in general damages.

(3) The jury committed error in awarding only $1,000.00 for past lost wages.

## LAW AND DISCUSSION

Mrs. Jannise contends the jury instruction given by the trial court, which holds a left-turning motorist to a higher standard of care and creates a presumption of negligence, is inapplicable to the facts in this case and *compelled* the jury to conclude she was at fault. We agree. The duty required of a left-turning motorist is mandated by La.R.S. 32:104 which provides, in relevant part:

A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.

B. Whenever a person intends to make a right or left-turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one

4

hundred (100) feet traveled by the vehicle before turning.

C. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.

A motorist making a left-turn is required to provide a signal at least 100 feet from the intersection, private road or driveway and to refrain from crossing the center line "until such movement can be made with reasonable safety." La.R.S. 32:104(A). Moreover, when an accident occurs during a left-turn, the courts have held a left-turn is a dangerous maneuver and burdens the left-turning motorists with a presumption of negligence. This jurisprudential standard was articulated by this court in *Thomas v. Champion Insurance Company*, 603 So.2d 765 (La.App. 3 Cir. 1992), as follows:

> A left-turn is generally a dangerous maneuver which must not be undertaken until the turning motorist ascertains that the turn can be made in safety. (citations omitted.) A left-turning motorist involved in an accident is *burdened with a presumption of liability* and the motorist must show that he is free of negligence.

*Id.* at 767. (emphasis added.)

The trial court concluded since Mrs. Jannise was executing a left-turn into her driveway, a jury instruction regarding this presumption of negligence was appropriate. The trial court gave the following instruction to the jury:

> The law considers a left-turn to be the most dangerous maneuver a motorist may execute, and a driver attempting to make a left-turn has a duty to make certain the turn can be completed safely. A motorist attempting to turn left is required to exercise a very high degree of care and shall give the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close to the intersection as to constitute an immediate hazard. He should not attempt a left-turn unless he has taken every reasonable precaution to insure that the left-turn can be made without endangering approaching motorists. *Once the plaintiff has established that the defendant was attempting to make a left-turn when the accident occurred, the burden of proof then shifts to the defendant to provide that he was free of fault. Thus, you must presume that the defendant was at fault in this case, since she was executing a left-turn at the time of the accident.* (emphasis added.)

5

However, in order for the presumption of negligence to apply, the scope of the duty jurisprudentially recognized by our courts must extend to the plaintiff and the risk of injury which occurred must fall within the ambit of protection afforded under the law. The scope of the duty required of a left-turning motorist extends to vehicles approaching from the opposite direction or overtaking vehicles using the lawfully designated portions of the highway for travel. *Thomas,* 603 So.2d 765. A left-turning motorist is only required to make proper observation that the left-turn can be made safely without endangering other motorists. *Wooten v. Bartholomew*, 556 So.2d 75 (La.App. 4 Cir. 1990), *writ denied*, 90-614 (La. 4/20/90), 560 So.2d 23; *Falgout v. Louis-Jeune*, 00-2453 (La.App. 4 Cir. 10/3/01), 799 So.2d 610. In this case, Mr. Reed was neither an oncoming nor an overtaking vehicle. In fact, he was not even riding on the roadway where it can be reasonably anticipated vehicles would be located. Instead, he was located off of the service road, in a recessed ditch, or on the shoulder of the road. Moreover, the vehicle he was riding was never intended to be driven in such an area and Mr. Reed's actions placed him in a perilous position. In this case, we find the duty of care required of a left-turning motorist, with its attendant presumption of negligence, does not encompass the risk of injuring an individual who is traveling off of the highway and who suddenly crosses in the path of the motorist. The charge read to the jury by the trial court was given in error and led the jury to apply the wrong standard of care to Mrs. Jannise's actions. The record contains evidence that the jury was confused by the charge and felt compelled to find Mrs. Jannise was negligent simply because she was engaged in a left-turn when the accident happened. During deliberations, the trial court received a note from the jury which read: "If we put fault to both parties, do we have to have a dollar amount?"

When an improper jury instruction contributes to the verdict, no weight should

be given to that portion of the verdict. *Whiddon v. Hutchinson*, 94-2000 (La.App. 1 Cir. 2/23/96), 668 So.2d 1368. Therefore, we will give no weight to that portion of the jury verdict finding Mrs. Jannise negligent. However, it is not necessary to remand the case. When the entire record is on appeal, an appellate court may conduct a *de novo* review in order to access the fault of the parties using the appropriate standard of care. *Id.* The appropriate standard of care required of Mrs. Jannise is that of ordinary negligence and we will examine the facts to determine whether a reasonable person could have seen or could have anticipated the sudden appearance of an unlit dirt bike crossing a private driveway on a deserted unlit service road.

The accident occurred late at night in a rural area without street lights or other commercial developments. Mr. Reed was operating a small dirt bike which was not equipped with headlights or reflectors and is not designed for on-road use. The only illumination was provided from a small headlamp. Mr. Reed is an experienced bike rider. His job involves selling motorbikes and he advises customers on safety issues relating to the operation of the bikes. Mr. Reed testified he has experienced a number of close calls before this accident when motorists turned across his path at night while he was operating a motorcycle. Mr. Reed contends he was not traveling on the roadway, but was on the shoulder. However, the shoulder of the highway is designated for temporary emergency use by motorists or as a recovery center in case an inadvertent driver drifts from the roadway. *Shepard on Behalf of Shepard v. Scheeler*, 96-1690 (La. 10/21/97), 701 So.2d 1308. A motorist has no reason to anticipate the shoulder of the road will be used as a travel lane for a motorized dirt bike. In this case, Mrs. Jannise had no reason to expect Mr. Reed would be driving his unlit motorcycle on the shoulder of the dark, deserted service road late at night. Moreover, from our review of photographs of the accident site, the shoulder was

7

sloped downward toward the ditch. The evidence strongly suggests Mr. Reed was riding, not on the shoulder, but on the flat bottom portion of the ditch which was four and a half feet below the subject driveway. In fact, Deputy Clinton Darden, Jr. testified: "According to Mr. Reed, he was traveling *in a ditch* headed south along I-49 South Service Road." (emphasis added.) Mrs. Jannise had a right to assume that her driveway was safe for travel and she had no duty to guard against or discover an unlit vehicle traveling in a ditch four and a half feet below the level of the roadway. It is unreasonable to require Mrs. Jannise to anticipate Mr. Reed would appear"out of nowhere" right in the path of her car.

Mr. Reed was in a much better position to protect himself. It is undisputed he saw the lights of her car coming down the road. He testified when he saw the headlights, he "slowed down, down-shifted into first gear, and got as close to the ditch as possible." Although he was wearing a headlamp he testified he did not realize he was crossing a driveway. "The next thing I know, the headlights were coming towards me and I was – it kind of happened sort of fast."

Mrs. Jannise testified it was approximately three seconds from the time she executed the turn until the accident happened. "When I turned into the driveway, I remember hearing a horrible crash, and I immediately thought, Oh, my God, what did I hit? I didn't know if I had hit something . . . . At first I was blaming myself and then as I started to realize, this is a grown man at night on a dirt bike with no lights."

*Wooten v. Bartholomew*, 556 So.2d 75 (La.App. 4 Cir. 1990), involved a collision between a left-turning motorist and a motorcycle. The accident occurred on a two-lane highway at night. The testimony established the motorcycle had no headlights and was traveling at a high rate of speed. The motorcycle struck the automobile when the motorist turned left into the path of the motorcycle. The trial

court found the driver of the automobile free of fault in causing the accident and the appellate court affirmed, stating:

> By his testimony defendant established that he stopped and looked before making his turn. The motorcycle was approaching but defendant could not see him because he was too far away and had no lights. Because of his excessive speed plaintiff closed the distance on defendant before he could complete his turn. A turning motorist has the duty of making proper observation that the turn can be made safely. *Brightman*, supra. Bartholomew did this and his turn would have been made safely except that plaintiff could not be seen as he approached without lights at an excessive rate of speed.

*Id.* at 77.

In this case, Mrs. Jannise could not have anticipated Mr. Reed would be riding an unlit dirt bike in a ditch recessed below the level of the roadway and could not have anticipated he would unexpectedly appear in the path of her car. The evidence does not convince us that Mrs. Jannise was intoxicated, impaired, or distracted at the time of the accident. On the other hand, Mr. Reed is an experienced cyclist and well aware of dangers involved in riding a dirt bike near the roadway late at night. Our review of the evidence indicates Mrs. Jannise was not at fault in causing this accident. Accordingly, we reverse the judgment of the trial court. Because we find Mrs. Jannise free of fault, we need not address Mr. Reed's assignments of error regarding the award of damages.

## DECREE

Based on the foregoing review of the record, we reverse the judgment of the trial court. All costs of this appeal are assessed to Mark and Riki Reed.

**REVERSED.**