SARA LABOULIERE INDIVIDUALLY, ON BEHALF OF HER MINOR CHILDREN BRYCE LABOULIERE AND KAYDEN LABOULIERE AND AS BENEFICIARY OF THE ACTION OF RICHARD J. LABOULIERE, JR.
v.
SYSCO FOOD SERVICES OF NEW ORLEANS, L.L.C, AMERICAN HOME ASSURANCE AND WILLIAM A. IRVING
No. 2009 CA 0623.
Court of Appeals of Louisiana, First Circuit.
October 23, 2009.
Not Designated for Publication
KEVIN PATRICK MONAHAN, Counsel for Plaintiffs-Appellants Sara Labouliere, et al.
JAMES A. BURTON, DAVID F. BIENVENU, CHARLES E. RILEY, IV, SUSAN M. CARUSO, Counsel for Defendants-Appellees Sysco Food Services of New Orleans, L.L.C, American Home Assurance, and William A. Irvin
Before: PARRO, KUHN, and McDONALD, JJ.
KUHN, J.
Plaintiff-appellant, Sara Labouliere, individually and on behalf of her minor children, Bryce and Kayden Labouliere, appeals a summary judgment that dismissed with prejudice her wrongful death and survival actions, in which she sought to recover damages resulting from the death of her husband. We find defendants-appellees, Sysco Food Services of New Orleans, L.L.C. ("Sysco"), William A. Irvin, and American Home Assurance, Sysco's insurer, did not establish that they were entitled to summary judgment as a matter of law; therefore, we reverse the summary judgment in their favor.

I. FACTUAL AND PROCEDURAL BACKGROUND
According to plaintiffs February 24, 2006 petition, a motor vehicular accident occurred on November 22, 2005, involving two vehicles travelling eastbound on Pecue Lane, in Baton Rouge, Louisiana. The two eastbound travelers were Irvin, who was allegedly employed by Sysco and was driving its tractor truck and pulling a refrigerated trailer behind it, and Sara's husband, and Richard J. Labouliere, Jr., who was driving a motorcycle. Mr. Labouliere, who was travelling behind Irvin, attempted to pass the tractor truck and trailer, using the westbound travel lane. At the time of Mr. Labouliere's passing attempt, Irvin attempted to make a left turn into a private driveway. The two vehicles collided in the westbound lane of travel, resulting in Mr. Labouliere's death at the accident scene.
Plaintiffs petition alleged the accident was caused by Irvin's negligence in failing to ensure that the left turn he attempted could be made without endangering a passing vehicle and by failing to see what he should have seen. The defendants answered, generally denying plaintiffs allegations of Irvin's negligence, and they further asserted that Mr. Labouliere had illegally crossed the center "no passing" line on Pecue Lane when he attempted to pass Irvin's tractor truck and trailer.
Defendants filed a motion for summary judgment, which referenced an accident report prepared by an East Baton Rouge Parish Sheriffs officer who had investigated the accident in question.[1] Because "Pecue Lane was marked with double yellow `No Passing' lines as well as posted with `No Passing' road signs," defendants contend that as a matter of law, Irvin had no duty to Mr. Labouliere and that summary judgment should be granted in defendants' favor.
Plaintiff filed two motions for continuances, asserting she was in the process of contacting expert witnesses in the field of accident reconstruction and needed additional time to present by affidavit the facts essential to justify her opposition. The trial court granted these two continuances but ultimately held a hearing on defendants' motion for summary judgment on May 12, 2008. Although the record before us does not reference an opposition to the motion by plaintiff, the record reveals that plaintiff introduced the affidavit of Dr. Olin K. Dart, Jr., into evidence during the hearing on the motion. In this affidavit, Dr. Dart, a civil engineer, stated he reviewed various documents provided to him by plaintiffs counsel and formed an opinion that Irvin violated the duty imposed upon a left-turning vehicle in that he did not ascertain whether his turn could be made safely without endangering the safety of a passing motorist.[2]
Following the hearing, the trial court granted the defendants' motion for summary judgment and dismissed plaintiffs claims with prejudice, ordering each party to bear their own costs. Plaintiff has appealed, urging the trial court erred in granting the defendants' motion because a genuine issue of material fact exists as to whether Irvin ascertained whether he could safely perform the left turn before executing it.

II. ANALYSIS
An appellate court reviews a trial court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 750. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966B. The initial burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party's claim, but he must point out that there is an absence of factual support for one or more elements essential to the claim. La. C.C.P. art. 966C(2).
Louisiana Code of Civil Procedure articles 966 and 967 do not permit a party to utilize unsworn and unverified documents to support a motion for summary judgment. Bunge North America, Inc. v. Bd. of Commerce & Indus, and Louisiana Dep't of Econ. Dev., 07-1746 (La. App. 1st Cir. 5/2/08), 991 So.2d 511, 527, writ denied, 08-1594 (La. 11/21/08), 996 So.2d 1106. A document that is not an affidavit or sworn to in any way or certified is not of sufficient evidentiary quality on summary judgment to be given weight in determining whether or not there remain genuine issues of material fact. Lewis v. Jabbar, 08-1051, p. 4 (La. App. 1st Cir. 1/12/09), 5 So.3d 250, 254. The accident report submitted by defendants in support of its motion was not authenticated or sworn to in any way. Thus, we cannot consider the report in evaluating the propriety of the summary judgment. Id., 08-1051 at p. 6, 5 So.3d at 255.
During oral arguments before this court, the parties did not dispute that this accident occurred on a portion of Pecue Lane that was marked as a no passing zone for eastbound traffic. Thus, we find applicable La. R.S. 32:77, which provides:
A. The Department is hereby authorized to determine those portions of any highway where overtaking and passing or driving to the left of the roadway would be especially hazardous, and shall by appropriate signs or markings on the roadway indicate the beginning and end of such zones, and when such signs and markings are in place and are clearly visible to an ordinary observant person, every driver shall obey the directions thereof.
B. Where signs or markings are in place to define a no-passing zone as set forth in paragraph A, no driver shall at any time drive on the left side of the roadway within such zone, or on the left side of any pavement striping, designated to mark such no-passing zone, throughout its length.
Further, because it is undisputed that Irvin was executing a left-turn maneuver when the accident occurred, La. R.S. 32:104 is also applicable and provides, in pertinent part, as follows:
A. No person shall ... turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.
C. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.
Without question, the left-turning motorist has a strong duty of care which requires not only looking before turning, but also seeing what is observable. Barlow v. State Farm Mut. Auto. Ins. Co., 93-2385, p. 5 (La. App. 1st Cir. 11/10/94), 645 So.2d 1256, 1259, writ denied, 94-2980 (La. 2/3/95), 649 So.2d 406. A left turn is a dangerous maneuver, and a driver has a duty not to attempt the turn until he ascertains it can be completed safely. Lewis v. Smith, 40,590, pp. 6-7 (La. App. 2d Cir. 1/25/06), 920 So.2d 920, 925.
In support of their motion, defendants argue that the duty of a left-turning motorist extends to vehicles approaching from the opposite direction or overtaking vehicles using lawfully designated portions of the highway for travel, and this duty does not extend to a motorist travelling in a no-passing zone. We reject defendants' contention, finding the left-turning motorist owes a duty to an overtaking motorist even when such a motorist is travelling in a no-passing zone. See Rawls v. Morris, 470 So.2d 531 (La. App. 1st Cir. 1985) (wherein the court allocated sixty percent fault to a passing driver, who had violated a no passing zone, and forty percent fault to the left-turning motorist who failed to signal prior to turning; Roberts v. Robicheaux, 04-1405 (La. App. 3d Cir. 3/2/05), 896 So.2d 1232, writ denied, 05-0792 (La. 5/13/05), 902 So.2d 1021 (wherein the court found a passing driver seventy-five percent at fault in causing an accident because he attempted to pass in a "no-passing" zone, and the left-turning motorist was found to be twenty-five percent at fault for improper lookout and signalization). Where both the left-turning motorist and the overtaking motorist have breached their respective duties, fault should be apportioned between them based on the factors addressed in Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La. 1985). See Rawls; Roberts.[3]
In the instant case, we cannot determine whether Irvin breached the statutory duty imposed by La. R.S. 32:104 because there remain genuine issues of material fact as to whether Irvin ascertained that he could make the left turn safely, i.e., whether he looked for overtaking motorists, whether he gave a signal indicating his intention to turn, and whether such signal was activated not less than one-hundred feet before turning.
Accordingly, we find that defendants have not carried their initial burden to support their motion for summary judgment, i.e., they have failed to establish an absence of factual support for one or more elements essential to plaintiffs claim. Defendants have not established that Irvin owed no duty to Mr. Labouliere or that the duty owed was not breached. Thus, defendants have failed to establish that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

III. CONCLUSION
For these reasons, we reverse the trial court's judgment in favor of defendants and remand this matter for further proceedings consistent with this opinion. Assessment of appeal costs is to await a final resolution of this matter.
REVERSED.
NOTES
[1] This accident report was not authenticated, certified, or sworn to in any way.
[2] We note that Dr. Dart's affidavit references, but does not discuss the content of, various documents, such as Richard's death certificate, an East Baton Rouge coroner's report, medical and laboratory reports, and various depositions. These documents were not filed into the record and, thus, are not available for this court's consideration. Additionally, the motor vehicle accident report was listed by Dr. Dart as an item reviewed by him, but we have previously noted that the only copy of this accident report included in our appellate record is not authenticated, certified, or sworn to in any way. Despite the conclusory nature of the affidavit, defendants did not file a motion to strike it. See Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 16 (La. 2/29/00), 755 So.2d 226, 235.
[3] We find Reed v. State Farm Mut. Auto. Ins. Co., 05-1532 (La. App. 3d Cir. 5/3/06), 929 So.2d 871, writ denied, 06-2000 (La. 11/3/06), 940 So.2d 672, cited by appellee, is distinguishable from the facts of the instant case. The Reed court held that the scope of the duty of a left-turning motorist did not extend to a driver of a dirt bike, which was not equipped with headlights, a headlamp, or reflectors and was driven at night in a recessed ditch off of a service road or on the shoulder of the service road. As the court noted, the driver of the dirt bike was neither an oncoming nor an overtaking vehicle, and the left-turning motorist had "no reason to expect [that a motorist] would be driving his unlit motorcycle on the shoulder of the dark, deserted service road late at night." Reed, 05-1532 at p. 7, 929 So.2d at 876.

Additionally, Lennard v. Champaign, 05-174 (La. App. 5th Cir. 11/29/05), 917 So.2d 1134, writ denied, 05-2593 (La. 4/17/06), 926 So.2d 516, also cited by appellee, held that a left-turning motorist "could assume that a following motorist would not have crossed a clearly marked solid traffic line to travel against the flow of traffic," into the center lane that was marked for passage exclusively in the opposite direction. The left-turning motorist's deposition established that she habitually signaled when turning, she knew there were cars behind her, she had checked her rearview mirror periodically, and she was unsure if she had looked for other vehicles prior to turning, but she assumed she had. To the extent that the Lennard court found no duty was owed to the following motorist, we decline to follow such reasoning. Lennard, 05-174 at p. 7, 917 So.2d at 1137-38.