STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-671

HEATHER TATE, ET AL.

VERSUS

ROBERT TURNAGE, ET AL.

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2011-6754-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Shannon J. Gremillion, Judges.

AFFIRMED.


Mark J. Neal
Neal Law Firm
P.O. Box 14657
Monroe, LA 71207-4657
(318) 807-0929
COUNSEL FOR DEFENDANT/APPELLANT:
    Robert Turnage
    Southern Casualty Ins. Co.

Cory P. Roy
Law Offices of Cory P. Roy
P. O. Box 544
Marksville, LA 71351
(318) 240-7800
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Heather Tate, et al.

**GREMILLION, Judge.**

The defendants, Robert Turnage and Southern Casualty Insurance Company (collectively Turnage), appeal the judgment in favor of the plaintiffs, Heather Tate, individually and on behalf of her minor child, Nicholas Tate, arising out of a motor vehicle accident.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On Memorial Day, May 30, 2011, Tate was exiting a McDonald's parking lot on Louisiana Highway 28 East in Pineville.  Louisiana Highway 28 East consists of five lanes:  Two lanes traveling west, two lanes traveling east, and a turning lane in the middle.  Tate was attempting to proceed eastbound, which required that she cross two lanes of westbound traffic and the turning lane.  Turnage was traveling westbound on Highway 28 East and was stopped for a traffic light.  Turnage proceeded forward and hit the driver's rear side of Tate's vehicle.

Tate filed a petition for damages in June 2011.  Following a March 2012 bench trial, the trial court found Tate 10% liable and Turnage 90% liable.  It awarded Tate general damages of $16,500.00, special damages of $5,831.01, and property damage in the amount of $3,262.17.  It awarded her son general damages of $3,000.00 and special damages of $658.00.  The trial court rendered judgment in April 2012.  Turnage now appeals.

## ISSUES

Turnage argues that the trial court was manifestly wrong or clearly erroneous in finding that:

1. The Plaintiff was essentially free from fault and met the heightened burden of proof imposed upon left-turning motorists from private driveway;

2. The Plaintiff preempted the Defendant's right-of-way, although the Accident did not occur at an intersection;

3. That Defendant was 90% at fault, although the Court found credible his testimony that he did not motion to the Plaintiff that the way was clear for her to cross the highway;

4. The Plaintiff was 10% at fault in causing the Accident[.]

## DISCUSSION

*Standard of Review*

A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

> The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Id.* at 844.

Though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Id.* "[W]here two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Stobart v. State Through DOTD*, 617 So.2d 880, 883 (La.1993). "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Id.* at 882. Allocations of fault are subject to the abuse of discretion standard. *Shelvin v. Allstate Ins. Co.*, 99-833 (La.App. 3 Cir. 11/3/99), 747 So.2d 160.

2

*Testimony*

Tate testified that she traveled with her six-year-old son and puppy to McDonald's to pick up some lunch for her husband. Tate testified that as she exited the McDonald's to make a left turn, she saw no traffic in the outermost lane closest to McDonald's, but that Turnage was in the inner lane closest to the turning lane. Tate said that Turnage signaled for her to go. She said that Turnage was at a complete stop at the time. Tate said that she signaled to Turnage, who then signaled again for her to go. Tate proceeded forward, crossing the outside lane and half-way crossing the inner lane before her vehicle was struck by Turnage's vehicle. The front part of Tate's vehicle was half-way into the turning lane when she was hit. Turnage struck the rear door and the gas tank on the driver's side.

Turnage testified that he has a commercial driver's license and has driven eighteen-wheeler trucks for a living for the past twelve years. Turnage denied indicating to Tate that it was safe to enter traffic. He said he "gave her room" to pull out into traffic but never made eye contact with her or motioned to her that it was safe for her to approach. Turnage said that he would never motion for someone to enter traffic because, as part of his profession, he was taught never to do so because a driver of an eighteen-wheeler cannot see all the way around the vehicle. He said he also follows that rule when he is driving his personal vehicle, which he was driving on the day of the accident.

Turnage said that he had dropped off his daughter and was headed to the local mall to kill time. He said traffic was heavy that day due to the holiday. Turnage said he saw that the approaching light was red, and came to a stop. He testified:

> A. . . . Got close to McDonalds and seen her car there, and just left a
>    gap for her to come through, you know, if she wished.

Q. Did she do that initially?

A. She eventually come through. Like I said I wasn't looking at her specifically. You know, I was just kind of looking around, you know, watching the light and everything.

He said that when the light turned green he proceeded to move forward and Tate drove in front of him. Turnage said that "before I proceeded forward I knew there was nothing in front of me." However, later in his testimony, Turnage admitted that he "did not check right" before proceeding even though he knew he had left a gap for a potential left-turning motorist exiting the McDonald's.

The trial court, in its oral reasons for ruling, stated that it did not find whether Turnage motioned for Tate to enter relevant. Instead, it found the main factor to be the gap that Turnage left, stating:

> . . . [I]f you created the gap then you have a duty . . . a new duty that arises that before you proceed that you proceed with all due care regarding what is ahead of you. And if you create a gap you cannot merely look straight ahead. You've created a situation where you have to look to your left and look to your right before you close that gap. Whether your [sic] closing the gap because you don't feel like leaving a gap anymore or whether you're closing the gap because the light has turned green is really irrelevant.

The trial court went on to find that Tate "preempted the intersection by a wide margin, and the damage being behind the driver on her side."

Louisiana Revised Statute 32:104(A) requires that a turning vehicle must not enter the roadway "unless and until such movement can be made with reasonable safety." Further, La.R.S. 32:124 requires that a motorist entering a highway from a private road or driveway "yield the right of way to all approaching vehicles so close as to constitute an immediate hazard."

We have set forth the duties of drivers in a situation where one driver is exiting a private driveway as follows:

> A motorist who is about to enter a roadway from a private driveway is required to yield the right of way to all approaching

4

vehicles so close as to constitute an immediate hazard. *Unusual*, *extreme*, and *high* care toward favored traffic is required of such a motorist under the case law. Conversely, the duty of the driver on the favored street toward the intruding motorist is the much lesser ordinary care and that driver generally may rely on the assumption or presumption that those vehicles entering the roadway from less favored positions such as a private drive will not drive into the path of favored traffic. The motorist who is otherwise proceeding lawfully on the favored street is not required to look out for or search in anticipation of careless drivers who might enter his right of way from a private driveway in violation of the statute. [La.R.S. 32:124.] The presumption or assumption may *not* be relied on by a motorist who is proceeding unlawfully before or after he sees the intruding vehicle.

*Shelvin*, 747 So.2d at 162, quoting *Valin v. Barnes*, 550 So.2d 352, 355-356 (La.App. 3 Cir.), *writ denied,* 552 So.2d 399 (La.1989). While a left-turning motorist generally has a heightened duty of care, a presumption of negligence against the left-turning motorist will not apply if the scope of the duty does not extend to the plaintiff. *Reed v. State Farm Mut. Auto. Ins. Co.*, 05-1532 (La.App. 3 Cir. 5/3/06), 929 So.2d 871, *writ denied*, 06-2000 (La. 11/3/06), 940 So.2d 672. "A left-turning motorist is only required to make proper observation that the left-turn can be made safely without endangering other motorists." *Id.* at 875.

Turnage argues that Tate failed to meet her burden of extreme care in making a left turn "as evidenced by the fact that she attempted the left turn and the accident occurred." This argument fails, as it would always cast every left-turning motorist with liability. Additionally, the presumption in favor of Turnage no longer existed once he left a gap for Tate to enter and then failed to look to his right before proceeding forward. We find no error in the trial court's finding that once Turange left the gap for Tate to enter, Turnage had a duty to observe before closing the gap. Moreover, the location of the damage over the right rear tire well further indicates that Turnage proceeded unlawfully after Tate had nearly completed her left turn maneuver in front of Tate.

5

Turnage argues that Tate's "entire case relied upon her testimony involving the alleged motion/signal by Defendant Tate." Turnage claims that the trial court found Tate's testimony about Turnage's communications to her was not credible. Turnage relies on a portion of the trial court's oral reasoning that states: "So even I accept it [as] true that he never made eye contact with her or waived her on, still he left a gap." The trial court never said it did not find Tate's testimony credible; we interpret this to mean that hypothetically, even if he had considered it as true that Turnage did not motion for Tate to enter the roadway, he would still be at fault. We find that the trial court did not rely on the testimony regarding the motion or hand signal, and we find no error in its disregard.

Turnage next argues that the trial court erred in applying the doctrine of preemption to the facts of this case. We disagree. A similar argument was recently made before this court in *Johnson v. Smith*, 11-853, p.7 (La.App. 3 Cir. 3/14/12), 86 So.3d 874, 880 (footnote omitted), where we stated:

> [T]he doctrine of preemption may allow a non-favored motorist to recover if he crossed an intersection or entered a favored street only after determining that he had a reasonable opportunity to do so safely without endangering or impeding the approaching vehicles on the favored street. *See Cormier v. Albear*, 99-1206 (La.App. 3 Cir. 2/2/00), 758 So.2d 250. The doctrine is based upon various statutes of the Highway Regulatory Act governing intersections and is not applicable to the facts of this case.

As in *Johnson*, we find the trial court used the term "preemption" loosely to describe the fact that the point of impact to Tate's vehicle (the rear tire well on the driver's side) indicated that Tate's vehicle had nearly cleared, or preempted, Turnage's vehicle when the impact occurred. Moreover, the trial court did not abuse its discretion in finding Turnage 90% at fault.

As the trial court pointed out, Tate had nearly cleared Turnage's lane and was half-way into the turning lane when he hit the rear of her car. Turnage

6

admitted he did not look right before proceeding once the light had turned green after he purposefully left a gap for motorists exiting the McDonald's restaurant. Accordingly, the trial court did not err in finding Turnage 90% liable.

## CONCLUSION

The judgment of the trial court in favor of the plaintiffs/appellees, Heather Tate, individually and on behalf of her minor child, is affirmed. All costs of this appeal are assessed against the defendants/appellants, Robert Turnage and Southern Casualty Insurance Company.

**AFFIRMED**.