716 So.2d 463 (1998)
Vanessa COLEMAN
v.
Nellie PARRET and Allstate Insurance Company.
No. 98-CA-121.
Court of Appeal of Louisiana, Fifth Circuit.
July 28, 1998.
*464 Rhett M. Powers, Gaudin & Gaudin, Gretna, for plaintiff-appellee.
James S. Rees, III, Covington, for defendant-appellant.
Before GOTHARD and DUFRESNE, JJ., and MURPHY, J. Pro Tem.
ROBERT M. MURPHY, Judge Pro Tem.
Defendant/appellees Nellie Parret and Allstate Insurance Company appeal a judgment in favor of plaintiff/appellant Vanessa Coleman.
Ms. Coleman filed suit for damages in the Second Parish Court for the Parish of Jefferson, averring in her petition that while attempting to turn into a driveway on Cohen Street in Marrero, her auto was struck by the Parret vehicle. Following trial on the merits, the court took the matter under advisement and subsequently rendered judgment in favor of plaintiff and against defendants. We affirm for the reasons to follow

EVIDENCE AND TESTIMONY
At trial, the parties stipulated to the authenticity of the medical bills as well as to Allstate's coverage.
Ms. Coleman testified that at the time of the accident, she was driving on Cohen Street at about 20-25 miles per hour. Intending to turn left into the driveway of a friend, she slowed down and put on the turn signal, looking to see if everything was clear. She noticed that there was another car behind her, but it was at a "reasonable distance." As she proceeded to negotiate the turn, the following vehicle came around from behind her and hit her car on the left side. Ms. Coleman testified that she had not stopped her vehicle.
Following the accident, Ms. Coleman was shaken up. She got out of her car and asked defendant for her driver's license so that the police could be called; Parret refused to comply, and as plaintiff went to call the police, defendant sped off. Plaintiff obtained the license plate number and reported it to the police. The defendant returned to the scene about a half hour later, just after the police arrived.[1]
On cross-examination, plaintiff admitted that in her deposition, she had testified that she looked in her rearview mirror and saw nothing; however, she explained at trial: "When I said I looked behind me and there's nothing, I mean to the point that it's safely (sic) for me to make a turn; that's exactly what I mean and no more." If she had seen *465 defendant in the act of passing her, she would not have turned.
Ms. Esther Renfroe, the friend whom plaintiff was planning to visit at the time of the accident, saw the collision. She stated that she saw plaintiff proceeding to turn into her driveway and that plaintiff had her turn signal on. She saw the defendant's vehicle come up from behind and saw the "bump". Defendant's car had passed to the left of plaintiff's. The defendant had continued on down the street, and plaintiff had to run to defendant's car to ask for a driver's license.
Ms. Nellie Perret testified that on the morning in question, she exited her driveway on Cohen Street, which was about three houses away from where the accident occurred. She saw plaintiff's car pass in front of her and proceeded in the same direction as plaintiff. She saw that plaintiff had stopped on the side of the road, to her right, and that Ms. Coleman was looking down, "fiddling" with something on her seat. Parret slowed down and waited awhile, "... to see, you know, what she was going to do because she was kind of out in thein my path. So I just went around her." Defendant blew her horn to let Coleman know she was coming. As Ms. Parret passed, plaintiff made her turn and hit defendant's car "further back, by the wheel." According to defendant, plaintiff did not have her turn signal on. Parret testified that she was going about 20-25 miles per hour and did not feel the impact. She did not stop immediately, but after traveling a few more feet, she heard a noise and realized she had been hit. Defendant stated that she offered to swap insurance information with plaintiff, and to call the police, but plaintiff was "in a rage" and defendant did not stay "because of the way she was acting." Parret went to work and then called the police, later returning to the scene. Defendant testified that there were no witnesses to the accident.
Admitted as exhibits at trial were the medical bills and records, the insurance policy evidencing Parret as an insured of Allstate, and a photograph of plaintiff's car showing damage to the left front turn signal light. There was no photo of defendant's car or any damage thereto.
After taking the matter under advisement, the court awarded plaintiff general damages in the amount of $7,200.00; lost wages in the amount of $350.00; and past medicals in the amount of $1,823.75, for a total of $9,373.75. No reasons for judgment were given.
Because the trial court granted the full amount of medicals to which the parties stipulated, we must presume that the court, in the absence of anything to the contrary, found the defendant to be one hundred percent (100%) at fault.
On appeal, Allstate urges that the court erred in finding that Parret was guilty of negligence and alternatively, that the court erred in failing to find plaintiff to be comparatively negligent.

ANALYSIS
LSA R.S. 32:104 reads as follows:
A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.
...
D. The signals provided for in R.S. 32:105(B) shall be used to indicate an intention to turn, change lanes or start from a parked position and shall not be flashed on one side only on a parked or disabled vehicle, or flashed as a courtesy or "do pass" signal to operators of other vehicles approaching from the rear.
This court recently stated in Severson v. St. Catherine of Sienna Catholic Church, 707 So.2d 1026 (La.App. 5 Cir.1998):

*466 Under our jurisprudence a motorist attempting to turn left must make certain the turn can be made without danger to normal overtaking or oncoming traffic and he must yield the right of way to such vehicles. He must refrain from making the left turn unless the way is clear, and if a collision occurs while he is attempting such a maneuver the burden is upon him to show that he was free from negligence.
Severson, supra, cited Plaisance v. Epherson, 466 So.2d 485, 487 (La.App. 5 Cir.1985).
The burden of proving freedom from negligence in executing the turn rests upon the person making the turn. Severson, supra; Plaisance, supra. Louisiana jurisprudence confirms the statutory law by holding that both the left-turning motorist and the overtaking, passing motorist must exercise a high degree of care because they are engaged in dangerous maneuvers. Neal v. Highlands Insurance Co., 610 So.2d 177 (La. App. 3 Cir.1992), writ denied, 612 So.2d 100 (La.1993); Summarell v. Ross, 660 So.2d 112 (La.App. 2 Cir.1995).
In the present case, the plaintiff was required to give a signal of her intent to make a left turn at least 100 feet before reaching the private driveway. In addition to giving the proper signal, the plaintiff was required to make a proper observation that the turn could be made without endangering a passing vehicle. See Bamburg v. Nelson, 313 So.2d 872, 875 (La.App. 2 Cir.), writ denied, 318 So.2d 57 (La.1975). Also Walton v. Bellard, 581 So.2d.307 (La.App. 3 Cir.1991) writ denied 585 So.2d 567 (La.1991).
The duties of the following, or passing motorist, are defined in LSA-R.S.32:73 in part[2] as follows:
The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:
(1) Except when overtaking and passing on the right is permitted, the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance, and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.
The driver of the following or overtaking vehicle must be alert to the actions of the motorists preceding him on the highway. Kilpatrick v. Alliance Cas. and Reinsurance Co., 663 So.2d 62 (La.App. 3 Cir.1995). That driver (of an overtaking or passing vehicle) has the duty to ascertain before attempting to pass a preceding vehicle that from all the circumstances of traffic, lay of the land, and conditions of the roadway, the passing can be completed with safety. Palmieri v. Frierson, 288 So.2d 620 (La.1974); Kilpatrick, supra.
In the case at bar, the testimony of plaintiff and defendant were contradictory, but Mrs. Renfroe's testimony supported plaintiff's version of events. It appears that the trial court found plaintiff's statements, and that of her witness, more credible than that of defendant. Credibility determinations are subject to the strictest deference and the manifest error-clearly wrong standard demands great deference for the findings of the trier of fact. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305, 1313.
The applicable standard for such a review is the manifestly erroneous or clearly wrong standard. Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216. In applying this standard our inquiry is not whether this court may have made a different factual determination, but rather whether the facts found by the trier of fact are based on reasonable evaluations of credibility and reasonable inferences drawn from the evidence. Rosell v. ESCO, 549 So.2d 840 (La.1989); Earhart v. Brown, 702 So.2d 976 (La.App. 5 Cir.1997).
We find no manifest error in the apparent credibility or factual determinations *467 herein. The evidence produced at trial demonstrates that the defendant pulled out into the left lane as plaintiff began to execute her left turn. In judging whether a left turn can be made in safety, the turning motorist has the right to assume that a following motorist will observe all the duties imposed upon him by law and common sense. Keating v. Holston's Ambulance Service, Inc., 546 So.2d 919, (La.App. 3 Cir.1989); Budget Rent-ACar of New Orleans v. Gradnigo, 611 So.2d 147 (La.App. 3 Cir. 1992). Thus plaintiff herein had the right to assume, having properly utilized her left signal light and having observed that the Parret vehicle was at a reasonable distance behind her (and thus not in the act of passing), that the defendant failed in her duty to ascertain that her passing maneuver could be completed safely under the circumstances.
Our review of the record on appeal discloses no error in the determination by the trial court that plaintiff was not negligent, and that defendant was 100% at fault in causing the accident.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to appellant.
AFFIRMED.
NOTES
[1] Defendant also testified on direct about her injuries; however, since quantum has not been appealed, we need not summarize that portion of her testimony.
[2] LSA-R.S. 32:75 also discusses the duties of a passing motorist relative to oncoming traffic, and thus is inapplicable to our facts.