McClendon, j.
 

 |2In this personal injury case arising out of an automobile accident, a defendant motorist and his insurer appeal a judgment finding the defendant motorist the sole cause of the accident and awarding damages. For the following reasons, we amend the judgment as to the allocation of fault and affirm as amended.
 

 FACTS AND PROCEDURAL HISTORY
 

 The automobile accident occurred on September 22, 2005, on Morris Road (Louisiana Highway 443) in Tangipahoa Parish between a vehicle being driven by Riyan S. Dryer and a vehicle being driven by William R. Gohres. Morris Road is compromised of two lanes of travel, one northbound and one southbound. Dryer, who was traveling in a northerly direction on Morris Road, was attempting to make a left turn across the southbound lane of travel. He was stopped and waiting for traffic in the southbound lanes to clear prior to executing the maneuver. Dryer’s vehicle was followed by a white utility van, with the Gohres vehicle directly behind the van. Gohres attempted to pass both the van and Dryer’s vehicle while Diyer was stopped waiting to turn. Impact occurred when Gohres, in the process of passing Dryer, struck the Dryer vehicle as Dryer was executing his turn.
 

 On September 21, 2006, Gohres, along with his parents, filed suit against Diyer and his liability insurer, Safeway Insurance Company of Louisiana, seeking recovery for medical expenses, general damages, and property damages. Dryer and Safeway specifically denied negligence on Dryer’s part, and contested the amount of damages sustained by plaintiffs.
 
 [1]
 
 Defen
 
 *643
 
 dants also asserted that Gohres was 100% at fault in causing the accident, or alternatively, was comparatively at fault.
 

 1⅞At trial, Gohres testified that as he approached the van, he was traveling about 55 miles per hour. Gohres indicated that his speed “was pretty much constant” as he attempted to pass the van and Dryer’s vehicle, both of which he noted had slowed down. Gohres also testified that he could see the “outer edges” of Dryer’s vehicle, but he never looked to see whether Dryer’s brake lights or turn signal were activated.
 

 Dryer testified that he was returning to his employment following his lunch break and had been stopped for approximately ten or fifteen seconds waiting for oncoming traffic to clear. He had his left turn signal on and had looked in his rear view and driver’s side mirrors prior to turning. According to Dryer, he could not see what was behind the utility van.
 

 Demontaz Dunomes, a co-employee of Dryer, observed the accident from the driveway/parking lot into which Dryer was attempting to turn. Dunomes testified that Dryer had his turn signal on and was stopped between fifteen to twenty seconds waiting for oncoming traffic to pass before he attempted to turn. Dunomes described the accident as follows:
 

 [Dryer] had a van behind him. And as [Gohres] was coming on, he came around [Dryer]. [Gohres] came around the white van, and as he was coming around the white van, [Dryer] was turning left into the warehouse. As he was turning left, [Gohres] hit him. When [Gohres] hit [Dryer], he knocked [Dryer] out of the way and [Gohres] went down through the ditch and he hit a culvert and his vehicle flipped over on the roof.
 

 Louisiana State Police Trooper Fred Martinelli, the investigating officer, testified that Dryer’s vehicle was damaged on the left-hand front panel and the quarter panel of the left side. According to Trooper Martinelli, said damage indicated that Dryer had crossed the center line at the time of impact. Dryer was issued a citation for making an improper turn.
 
 [2]
 

 Following a bench trial, the court awarded Gohres $3,750.00 in general damages, plus medical expenses in the amount of $1,548.53. The court also awarded Gohres’ father, Robert, $455.60, which amount is reflective of the |,amount of his deductible under the insurance policy and the towing charges.
 
 [3]
 
 Dryer and Safeway have appealed the trial court’s ruling.
 

 MOTION TO STRIKE
 

 Appellants have filed a motion to strike pages one through eight of the record, which pages are indexed as “Court Minutes.” Appellants contend that the pages consist of notes reflecting the testimonies of various witnesses as opposed to entries by the minute clerk. Notwithstanding appellants’ position, we note that the entries indicate the trial court’s rulings on various issues and are indicative of court minutes,
 
 *644
 
 which are properly part of the record on review. Moreover, in light of the fact that the court’s minutes were unnecessary for our resolution of these issues presented herein, we deny appellants motion to strike these pages from the record.
 
 [4]
 

 ASSIGNMENTS OF ERROR
 

 Appellants have raised the following assignments of error:
 

 (1) The trial court erred in admitting into evidence the accident report completed by the investigating Louisiana State Police Trooper.
 

 (2) The trial court erred in, apparently, concluding that Riyan S. Dryer was 100% at fault in causing the accident made the basis of this matter or, alternatively, erred in failing to specifically assign percentages of fault to the two drivers involved in the subject accident, William R. Gohres and Riyan S. Dryer.
 

 (3) The trial court erred in awarding general damages to William R. Goh-res in the amount of $3,750.00.
 

 DISCUSSION
 

 Appellants note that plaintiffs introduced, over appellants’ objection, the accident report prepared by Officer Martinelli. Appellants contend that the mere fact that the investigating officer indicated that he had written the report and the |Breport was regularly produced in accordance with his business records does not turn the otherwise inadmissible report containing hearsay into admissible evidence.
 
 See
 
 LSA-C.E. art. 803(8)(b)(i). In support, appellants cite
 
 Maride v. Liberty Mut Ins. Co.,
 
 04-1149 (La.App. 3 Cir. 3/2/05), 898 So.2d 565, wherein the court noted that an accident report prepared by the investigating officer clearly contains hearsay as defined in LSA-C.E. art. 801(C) and is inadmissible unless it fits within one of the exceptions found in LSA-C.E. art. 803.
 
 Mande,
 
 04-1149 at p. 12, 898 So.2d at 574. Appellants argue that none of the exceptions found in Article 803 apply herein.
 

 We note that the trial court, in its reasons for ruling, did not reference the accident report and appai’ently placed little or no weight on the report. Rather, the trial court, in its reasons for judgment, indicated that it considered the testimony of the witnesses referenced above. Accordingly, even assuming that the accident report was improperly admitted, we find that it was harmless error.
 
 See Ross v. Noble,
 
 442 So.2d 1180, p. 1184 (La.App. 1 Cir.1983).
 

 Appellants contend that the trial court erred in concluding that Dryer was the sole party at fault for the accident, or alternatively, failing to specifically assign percentages of fault to the two drivers involved. Appellants note that pertinent hereto are the duties required of the left turning motorist as well as the duty of an overtaking motorist.
 

 Under Louisiana Revised Statutes 32:104,
 
 [5]
 
 a left turning motorist must
 
 *645
 
 signal his intent to turn at least 100 feet from the turning point and take steps to | ^ensure that the maneuver can be made safely. The giving of a signal, however, is immaterial if at the time the driver of the turning vehicle did not have the opportunity to make the turn safely.
 
 Wesley v. Home Indem. Co.,
 
 148 So.2d 333, 335 (La.App. 1 Cir.1962),
 
 judgment affirmed by,
 
 245 La. 133, 157 So.2d 467 (1963). He must make certain the turn can be made without danger to normal overtaking or oncoming traffic and he must yield the right of way to such vehicles.
 
 Lang v. Cage,
 
 554 So.2d 1312, 1316 (La.App. 1 Cir. 1989),
 
 writ denied,
 
 558 So.2d 605 (La.1990).
 

 The statutory duties of an overtaking vehicle are found in LSA-R.S. 32:73 and 32:75.
 
 [6]
 
 The driver of an overtaking vehicle must be alert to the actions of the motorists preceding him on the highway.
 
 Husser v. Bogalusa Coca Cola Bottling Co.,
 
 215 So.2d 921, 925 (La.App. 1 Cir. 1968). Before attempting to pass, the passing driver has a duty to ascertain from all circumstances of traffic, the lay of the land, and conditions of the highway that passing can be completed with safety.
 
 Palmieri v. Frierson,
 
 288 So.2d 620, 623 (La.1974). The turning motorist has the right to assume the following driver will observe all duties |7imposed by law and common sense.
 
 Sterling v. Ritchie,
 
 182 So.2d 735, 738 (La.App. 1 Cir.1966). A presumption of negligence is generally not applied to either driver.
 
 Duncan v. Safeway Ins. Co. of La.,
 
 35,240, 35,241, pp. 3-4 (La.App. 2 Cir. 10/31/01), 799 So.2d 1161, 1163. However, a presumption may arise if it is shown that the left turning motorist had crossed the centerline at the time of impact.
 
 Kilpatrick v. Alliance Cas. And Reinsurance Co.,
 
 95-17, p. 5 (La.App. 3 Cir. 7/5/95), 663 So.2d 62, 66,
 
 writ denied,
 
 95-2018 (La.l 1/17/95), 664 So.2d 406.
 

 The applicable standard of review is the manifestly erroneous or clearly
 
 *646
 
 wrong standard.
 
 Ambrose v. New Orleans Police Dept. Ambulance Service,
 
 93-3099 (La.7/5/94), 639 So.2d 216. In applying this standard our inquiry is not whether this court may have made a different factual determination, but rather whether the facts found by the trier of fact are based on reasonable evaluations of credibility and reasonable inferences drawn from the evidence.
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989). If an appellate court finds a “clearly wrong” apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court’s discretion.
 
 Clement v. Frey,
 
 95-1119, pp. 7-8 (La.1/16/96), 666 So.2d 607, 611.
 

 In the instant case, it was foreseeable that a motorist may be attempting to execute a left turn insofar as there were residences and businesses along the portion of the highway where the accident occurred and the vehicles traveling hr front of Goh-res had begun to decrease them speed. Further, although Gohres admitted that he was able to see the “outer edges” of the Dryer vehicle, he did not ascertain whether Dryer’s brake lights or left turn signal was activated before he attempted to pass. Thus, by his own admission, Gohres did not comply with his duties as a driver of a passing vehicle. Given Gohres’ testimony, coupled with the testimony of Dryer and Dunomes, we conclude that it was clearly wrong for the trial court not to assess any fault to Gohres.
 

 | RIn assessing the nature of the conduct, various factors may influence the degree of fault assigned, including: (1) whether the conduct results from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. The relationship between fault/negligent conduct and the harm to the plaintiff are considerations in detennining the relative fault of the parties.
 
 Watson v. State Farm Fire & Cas. Ins. Co.,
 
 469 So.2d 967 (La.1985).
 

 Although the passing motorist may take advantage of a presumption of negligence when the left turning motorist has crossed the center line,
 
 [7]
 
 we note that the evidence adduced at trial revealed that Dryer had his turn signal engaged, had been stopped for a short time, and had checked both his rear view and driver’s side mirrors prior to attempting his maneuver. Dryer indicated that it was somewhat difficult to see behind the large utility van insofar as he was driving a compact car, but he checked to ensure that there was “nothing coming” in the southbound lane before making his left turn. However, we note that the trial court may not have believed Dryer’s testimony that he looked in his side view mirror, based on the point of impact of the two vehicles.
 

 As to Gohres, he indicated that he was aware that there was a vehicle in front of the large utility van, but he never slowed his speed to ascertain whether the vehicle was stopped or turning and whether passing could be completed safely. Gohres was simply not alert to the actions of the motorists preceding him on the highway, nor did he sound his horn before or during his passing maneuver.
 

 In light of the foregoing, we conclude that the highest apportionment of fault that the trial court could have assessed against Dryer is 70%.
 
 See
 
 19Clement, 95-
 
 *647
 
 1119 at pp. 7-8, 666 So.2d at 611. Accordingly, Gohres is assessed with the remaining 30% of the fault.
 

 In their final assignment, appellants urge that the trial court erred in awarding general damages to Gohres in the amount of $3,750.00. In the accident, Gohres’ vehicle flipped, the roof caved in, and most of the vehicle’s glass had broken. The trial court, in its Reasons for Judgment, described the medical treatment as follows:
 

 Plaintiff, William Gohres, testified and the record reflects that he had lacerations from the broken glass and he began having pain the next day. He went to the emergency room at North Oaks Medical Center where he was examined, x-rayed, and released with medication. He testified that he was unable to perform as usual for about 2 weeks due to neck, shoulder and back pain. He took all of the prescribed medication, but did not seek further medical treatment.
 

 Gohres submits that $3,750.00 for a soft tissue injury that lasted two weeks is unsupported.
 

 In awarding damages, the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
 
 Youn v. Mantime Overseas Corp.,
 
 623 So.2d 1257, 1261 (La.1993),
 
 cert, denied,
 
 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Although we find the award on the higher end of a reasonable award, we cannot conclude that the award is abusively high.
 
 See Hanna v. Roussel,
 
 35,346 (La.App. 2 Cir. 12/5/01), 803 So.2d 261, wherein a plaintiff was awarded $6,500 for back pain lasting approximately one month and plaintiffs sole treatment was one visit to the emergency room, and
 
 Lowery v. Safeway Ins. Co. of Louisiana,
 
 03-1456, p. 5 (La.App. 3 Cir. 2/4/04), 865 So.2d 1060, 1064, wherein a plaintiff | mwas awarded $3,500 for injuries to her knee and head lasting approximately two to three weeks.
 

 CONCLUSION
 

 For the foregoing reasons, we deny appellants’ motion to strike. We affirm the amount of damages awarded to Gohres as well as to his father. However, we amend the judgment of the trial court to assess Gohres with 30% comparative fault, and reduce the amount of damages awarded to Gohres and his father accordingly. Costs of this appeal shall be assessed 70% to the appellants and 30% to the appellees.
 

 AMENDED AND AFFIRMED AS AMENDED. MOTION TO STRIKE DENIED.
 

 DOWNING, J„ concurs.
 

 [1]
 

 . Gohres' parents sought recovery for mental anguish, emotional distress, and loss of enjoyment of life.
 
 See Lejeune
 
 v.
 
 Rayne Branch Hosp.,
 
 556 So.2d 559 (La.1990).’ The trial court did not award any damages for these claims and no party has sought review of Lhat portion of the trial court’s ruling.
 

 [2]
 

 . We note that the mere fact that a traffic citation was issued is not determinative of liability.
 
 See Ruthardt v. Tennant,
 
 252 La. 1041, 215 So.2d 805 (La.1968).
 

 [3]
 

 . Although the trial court did not set forth any specific allocation of fault between the parties in the written reasons or in the judgment, it is apparent that the court assigned the entirety of the fault to Dryer insofar as there were no reductions in the special damages claimed and awarded Gohres or his father.
 
 See Coleman v. Parret,
 
 98-0121, p. 4 (La.App. 5 Cir. 7/28/98), 716 So.2d 463, 465, wherein the court noted that "[bjecause the trial court granted the full amount of medicals to which the parties stipulated, we must presume that the court, in the absence of anything to the contrary, found the defendant to be one hundred percent (100%) at fault.”
 

 [4]
 

 . Plaintiffs have also requested sanctions and attorney’s fees for having to respond to the motion to strike, but we deny plaintiffs' request.
 

 [5]
 

 . Louisiana Revised Statutes 32:104 provides, in pertinent part:
 

 A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
 

 B. Whenever a person intends to make a right or left turn which will take his vehicle
 
 *645
 
 from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.
 

 [[Image here]]
 

 D. The signals provided for in R.S. 32:105(B) shall be used to indicate an intention to turn, change lanes or start from a parked position and shall not be flashed on one side only on a parked or disabled vehicle, or flashed as a courtesy or "do pass” signal to operators of other vehicles approaching from the rear.
 

 [6]
 

 . Louisiana Revised Statutes 32:73 provides:
 

 The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:
 

 (1) Except when overtaking and passing on the right is permitted, the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance, and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.
 

 (2) Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.
 

 Louisiana Revised Statutes 32:75 provides:
 

 No vehicle shall be driven to the left side of the center of the highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction.
 

 [7]
 

 .
 
 See Kilpatrick,
 
 95-17, p. 5, 663 So.2d at 66.