DOMINIC JUDE BENFATTI AND LAUREN CARRERAS

VERSUS

PROGRESSIVE SECURITY INSURANCE COMPANY AND LEROY SMITH

NO. 22-CA-331

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 808-216, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING

March 01, 2023

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Marc E. Johnson, and Stephen J. Windhorst

<u>**REVERSED AND REMANDED**</u>

    **JGG**
    **MEJ**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
DOMINIC JUDE BENFATTI AND LAUREN CARRERAS
William R. Mustian, III

COUNSEL FOR DEFENDANT/APPELLEE,
PROGRESSIVE SECURITY INSURANCE COMPANY AND LEROY SMITH
John J. Erny, III

**GRAVOIS, J.**

In this auto accident case, plaintiffs, Dominic Jude Benfatti and Lauren Carreras, appeal the trial court's judgment which granted a motion for summary judgment filed by defendant, Progressive Security Insurance Company, and dismissed all of plaintiffs' claims against Progressive and it's insured, Leroy Smith. For the reasons that follow, we reverse the trial court's judgment which granted Progressive's motion for summary judgment and remand the matter to the trial court for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

The auto accident that is the subject of this matter occurred on the morning of June 4, 2020 in Kenner, Louisiana. Mr. Benfatti was driving a Hyundai Santa Fe owned by his girlfriend, Ms. Carreras, westbound on La. Highway 48,[1] a two-lane highway. As he neared the intersection of Highway 48 and Coleman Place, Mr. Benfatti observed an 18-wheeler followed by a number of vehicles stopped in his lane of travel. According to Mr. Benfatti, as he approached the stopped traffic, he slowed down and followed two cars from his lane into the eastbound lane in order to pass the stopped traffic. At the same time, Leroy Smith was in the westbound lane of Highway 48 as the second vehicle behind the 18-wheeler. Mr. Smith attempted to make a left turn onto Coleman Place from Highway 48 and collided with Mr. Benfatti's vehicle as Mr. Benfatti was in the process of passing Mr. Smith's vehicle. After the collision, Mr. Benfatti's vehicle traveled 332 feet, coming to rest in a yard off of Coleman Place. On July 13, 2020, Mr. Benfatti and Ms. Carreras filed a petition for damages against Mr. Smith and his insurer, Progressive.

---

[1] Highway 48 is also known as Third Street.

On November 10, 2021, Progressive filed a motion for summary judgment, arguing that Mr. Benfatti was solely at fault in causing the accident in question.[2] In support of its motion, Progressive included excerpts from the depositions of Mr. Benfatti and the investigating police officer, Officer Casey Smith, as well as a copy of the Uniform Motor Vehicle Traffic Crash Report. In its motion, Progressive alleged that the evidence presented shows that Mr. Benfatti violated La. R.S. 32:75 and La. R.S. 32:76(A)(2) when he passed Mr. Smith's vehicle within 100 feet of an intersection. Progressive argued that plaintiffs cannot meet their burden of proof at trial that Mr. Smith in any way acted negligently.

Plaintiffs filed an opposition to the motion for summary judgment, arguing that additional time was needed to take Mr. Smith's deposition. They argued that Mr. Smith had a legal duty as a left-turning motorist to ensure that it was safe before attempting to turn, and since Mr. Smith's deposition had not yet been taken, there was no evidence regarding what he did or did not do to ensure he could safely turn left. Further, plaintiffs objected to the police report attached as an exhibit to the motion for summary judgment.

A hearing on the motion for summary judgment was held on January 24, 2022. Following arguments by both parties, the trial court continued the hearing until after Mr. Smith's deposition could be taken.

Mr. Smith's deposition was taken on March 11, 2022. Thereafter, plaintiffs filed a supplemental memorandum in opposition to the motion for summary judgment, arguing that the principle of comparative fault is applicable in this case. Excerpts from Mr. Smith's deposition were attached as an exhibit to plaintiffs' supplemental opposition.

---

[2] At the time Progressive filed its motion for summary judgment, Mr. Smith had not yet been served with the petition for damages. On November 19, 2021, plaintiffs filed a "Motion to Appoint Private Process Server," and on January 13, 2022, Mr. Smith was served. On January 26, 2022, Mr. Smith filed an answer to the petition for damages.

At a subsequent hearing on the motion for summary judgment held on March 15, 2022, the trial court orally granted Progressive's motion for summary judgment. The trial court signed a written judgment on April 4, 2022 granting Progressive's motion for summary judgment, rendering judgment in favor of Progressive and Mr. Smith, and dismissing all of plaintiffs' claims against Progressive and Mr. Smith with prejudice. This timely appeal followed.

On appeal, plaintiffs argue that the trial court erred in granting Progressive's motion for summary judgment because this is a comparative fault case. They assert that the trial court erred in finding that Mr. Smith had no duty of care as a left-turning motorist to ascertain if it was safe for him to attempt to make the turn. Plaintiffs also argue that the trial court failed to rule on the admissibility of the police report that plaintiffs objected to in their opposition to the motion for summary judgment.

## LAW AND ANALYSIS

Appellate courts review a judgment granting or denying a motion for summary judgment *de novo*, using the same criteria that governs the trial court's determination of whether a summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Whitney Bank v. Garden Gate New Orleans*, *L.L.C.*, 17-362 (La. App. 5 Cir. 12/27/17), 236 So.3d 774, 780, *writ denied*, 18-0174 (La. 3/23/18), 239 So.3d 298.

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The initial burden of proof rests with the mover. La. C.C.P art. 966(D)(1). However, if the mover will not bear the burden of proof at trial, the mover's burden on the motion does not require him to negate all essential elements

of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id.* The nonmoving party must then produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.*

In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. *Larson v. XYZ Insurance* Co., 16-74 (La. 5/3/17), 226 So.3d 412, 416. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Id.* A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Id.*

Louisiana jurisprudence holds that a left-turning motorist and an overtaking, passing motorist must exercise a high degree of care as they are engaged in dangerous maneuvers. *See Kilpatrick v. All. Cas. & Reinsurance Co.*, 95-17 (La. App. 3 Cir. 7/5/95), 663 So.2d 62, 66, *writ denied*, 95-2018 (La. 11/17/95), 664 So.2d 406; *Coleman v. Parret*, 98-121 (La. App. 5th Cir. 7/28/98), 716 So.2d 463, 466.

Louisiana Revised Statute 32:75, which sets forth limitations on passing on the left, provides:

> No vehicle shall be driven to the left side of the center of the highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before

coming within one hundred feet of any vehicle approaching from the opposite direction.

Louisiana Revised Statute 32:76, which also sets forth limitations on passing on the left, provides, in pertinent part:

A. No vehicle shall at any time be driven to the left side of the highway under the following conditions:

* * *

(2) when approaching within one hundred feet of or traversing any intersection or railroad grade crossing.

The driver of an overtaking vehicle must be alert to the actions of the motorists preceding him on the highway. *See Gohres v. Dryer*, 09-0473 (La. App. 1 Cir. 11/18/09), 29 So.3d 640, 645, citing *Husser v. Bogalusa Coca Cola Bottling Co.*, 215 So.2d 921, 925 (La. App. 1 Cir. 1968). Before attempting to pass, the passing driver has a duty to ascertain from all circumstances of traffic, the lay of the land, and conditions of the highway that passing can be completed with safety. *Gohres*, 29 So.3d at 645, citing *Palmieri v. Frierson*, 288 So.2d 620, 623 (La. 1974).

Louisiana Revised Statute 32:104, which sets forth the duties of a left-turning motorist, provides, in pertinent part:

A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.

B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

The duty of a left-turning motorist includes properly signaling an intention to turn left and keeping a proper lookout for both oncoming and over-taking traffic in order to ascertain that the left turn can be made with reasonable safety. *Lennard v. Champaign*, 05-174 (La. App. 5 Cir. 11/29/05), 917 So.2d 1134, 1137, *writ*

22-CA-331                                           5

*denied*, 05-2593 (La. 4/17/06), 926 So.2d 516; *Gryder v. Jackson*, 32,037 (La. App. 2 Cir. 6/16/99), 739 So.2d 246, 249, *writ denied*, 99-2576 (La. 11/24/99) 750 So.2d 986. The left-turning motorist is required not only to look to the left before turning, but has a duty to see what should be observable. *Lennard*, 917 So.2d at 1137; *Hollier v. Gilder*, 306 So.2d 475 (La. App. 3d Cir. 1975). If the driver of a left-turning vehicle signals a left-hand turn, the left-turning driver only fulfills one-half of the requirement for making such maneuver, for it remains incumbent upon him to look to his rear to see if the left-hand lane is clear before beginning his left turn. *Lennard*, 917 So.2d at 1137; *Kilpatrick*, 663 So.2d at 67. Because a left turn is one of the most dangerous maneuvers for a driver to execute, there is a presumption of negligence on a left-turning motorist involved in a motor vehicle accident. *Henry v. Reeves*, 19-550 (La. App. 5 Cir. 4/28/20), 296 So.3d 1076, 1082, *writ denied*, 20-00646 (La. 9/24/20), 301 So.3d 1176.

In support of its motion for summary judgment, Progressive offered the deposition testimony of Officer Casey Smith of the Kenner Police Department. Officer Smith testified that he responded to the scene of the accident in approximately seven minutes. He was told by Mr. Benfatti that as he was traveling in the eastbound lane in order to pass slow traffic in the westbound lane, Mr. Smith conducted a left turn south onto Coleman Place, striking the passenger's side of Mr. Benfatti's vehicle. Mr. Smith told Officer Smith that the impact occurred upon him turning left onto Coleman Place. A witness who was in the vehicle directly behind the 18-wheeler and directly in front of Mr. Smith told Officer Smith that he observed Mr. Benfatti attempting to pass Mr. Smith "with speed" when the impact occurred. Officer Smith speculated as to the damage to each vehicle. He testified that Mr. Smith's vehicle was "slightly canted, like if it was conducting a left turn but then got struck" and had damage on the front of the driver's side, and that Mr. Benfatti's vehicle was damaged on the passenger's side.

According to Officer Smith, there is a dashed white line on the part of Highway 48 where the accident occurred. Officer Smith issued Mr. Benfatti citations for violating La. R.S. 32:75 (improper passing) and La. R.S. 32:58 (careless operation). Officer Smith did not issue any citations to Mr. Smith.

In his deposition, Mr. Benfatti testified that on the morning of the accident, around 6:30 a.m., he was driving to work in the westbound lane of Highway 48. An 18-wheeler followed by four cars were stopped in his lane of travel. As he approached the traffic, the two cars immediately ahead of him in the westbound lane moved into the eastbound lane to pass, and he "followed the flow of traffic," never coming to a stop. He testified that when he got up to where the 18-wheeler was, he was struck around the back passenger's side door of his vehicle. He testified that he had his foot on the brake, but the car would not stop. He proceeded through a field and a chain link fence and then hit both a carport and a vehicle under the carport. He admitted there was an intersection there where a car could make a left turn, but he testified that he was hit after the intersection. He did not see if Mr. Smith had his blinker on. He testified that the speed limit at that location was 35 miles per hour. He did not know for sure, but testified he was going "about that speed." The damage to his car included damage to both passenger's side doors.

In his deposition, Mr. Smith testified that his blinker was on, even after he was hit. When questioned whether he hit Mr. Benfatti or Mr. Benfatti hit him, he responded that Mr. Benfatti hit him and damaged the bumper and fender on the driver's side of his vehicle. Before he started making the left turn, he looked in his side-view mirror and did not see anyone. As he was making the left turn, Mr. Smith said that "this guy [came] out [of] the middle of nowhere. I don't know where he came from." He stated that he always looks in his side-view mirror when making a left turn to ensure no one is passing.

Upon *de novo* review, we find that genuine issues of material fact remain regarding the nature and extent of Mr. Benfatti and Mr. Smith's fault, if any, in causing the subject accident, thereby precluding the granting of summary judgment in this case at this time. Mr. Benfatti testified that he was following the flow of traffic in the eastbound lane, and it was after the intersection that his back passenger-side door was struck by Mr. Smith. In contrast, Mr. Smith testified that he was hit by Mr. Benfatti, damaging the bumper and fender on the driver's side of his vehicle. He stated that he looked in the mirror before turning, but he did not see anyone. Despite defendants' argument that Mr. Benfatti is solely at fault in causing the accident, based on the testimony presented, we find that genuine issues of material fact remain at this time regarding any negligence on the part of Mr. Smith as the left-turning motorist and any comparative fault on the part of Mr. Benfatti as the passing motorist. As such, the trial court erred in finding that there were no genuine issues as to material fact and that defendants were entitled to judgment as a matter of law.

Finally, plaintiffs argue that the trial court failed to comply with La. C.C.P. art. 966(D)(2) when it did not rule on their objection to the police report attached as an exhibit to Progressive's motion for summary judgment. At the first hearing on the motion for summary judgment on January 24, 2022, the trial court stated "[a]nd I understand the police report can't come in[,] I get that." Thus, it appears that the trial court did not consider the police report in rendering its judgment. Nevertheless, this Court has conducted a *de novo* review of this matter and did not consider the police report in reaching our conclusion. *See Watson v. Smith*, 17-0913 (La. App. 4 Cir. 5/16/18), 247 So.3d 811, 818.

## DECREE

For the foregoing reasons, the trial court's judgment which granted Progressive's motion for summary judgment is reversed and the matter is remanded to the trial court for further proceedings.

**REVERSED AND REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MARCH 1, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

## 22-CA-331

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
WILLIAM R. MUSTIAN, III (APPELLANT)

**MAILED**
JOHN J. ERNY, III (APPELLEE)
ATTORNEY AT LAW
1425 AIRLINE DRIVE
SUITE 200
METAIRIE, LA 70001