GRAVOIS, J.
Defendants/appellants, The Garden Gate New Orleans, L.L.C. ("Garden Gate"), Garden Gate Growers, L.L.C. ("Growers"), Chad Everett Harris, and Jacqueline Kendall Harris, appeal the trial court's grant of summary judgment in favor of plaintiff/appellee, Whitney Bank ("Whitney"). For the reasons that follow, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
On July 20, 2016, Whitney filed suit for breach of promissory notes and an overdrawn checking account against Garden Gate and Growers as principals, and Mr. and Mrs. Harris as guarantors. The petition alleged that Whitney was the holder and owner of the following:
1) a certain promissory note dated May 19, 2015 executed by Garden Gate in the original principal amount of $1,100,000.00 ("Note 1");
2) a certain promissory note dated March 8, 2012 executed by Garden Gate in the original principal amount of $200,000.00 ("Note 2");
3) a certain promissory note dated July 22, 2013 executed by Garden Gate in the original principal amount of $250,000.00 ("Note 3");
4) a certain overdrawn checking account in the name of Garden Gate; and
5) a certain promissory note dated November 21, 2014 executed by Growers in the original principal amount of $82,355.88 ("Note 4").
*778 Whitney alleged that defendants were justly, truly, and legally obligated and indebted to it for the outstanding principal sums due on the promissory notes, plus accrued interest, default interest, and late charges; the sum of the overdrawn account, plus interest, fees, charges, and other amounts as stated in the account agreement; and reasonable attorney's fees, all legal expenses and collection costs, and all costs of the proceeding.[1] The petition further alleged that the indebtednesses of Garden Gate and Growers were personally guaranteed by Mr. and Mrs. Harris pursuant to various Commercial Guaranties executed by them, respectively.[2]
According to the petition, Note 1 matured and became fully due and payable on May 19, 2016. Regarding the remaining notes, Whitney exercised its option to accelerate the maturity dates thereon due to nonpayment. The petition asserted that Garden Gate failed to make the payments due on Note 2 on September 8, 2015, and each successive month thereafter; Garden Gate failed to make the payments due on Note 3 on September 22, 2015, and each successive month thereafter; and Growers failed to make the payments due on Note 4 on September 21, 2015, and each successive month thereafter, with the exception of a credit applied on March 1, 2016. Whitney further asserted that it notified Garden Gate, Growers, and Mr. and Mrs. Harris of the acceleration and payments due on the notes and the overdrawn account by letter, and that the remaining unpaid balances have never been paid in full and remained due and owing.
Defendants requested and were granted an extension of time within which to answer the petition, and on September 23, 2016, they filed their answer and affirmative defenses. On October 4, 2016, Whitney filed a motion for summary judgment, supporting memorandum, statement of uncontested *779 material facts, and supporting attachments, including the affidavit of Brian Berns, a Vice President of Whitney, and copies of the promissory notes, guaranties, and other loan documents. Whitney alleged that no genuine issue of material fact existed in this case and that it was entitled to judgment as a matter of law as prayed for in its petition. The attestations made by Mr. Berns in his affidavit included:
• that his duties included the handling of loan accounts of customers with defaulted loan relationships with Whitney, including the defaulted loan relationship of defendants;
• that in this capacity, he had access to all of the loan files and payment history records of defendants;
• that he had reviewed defendants' loan files and payment history prior to executing the affidavit;
• that based on his review of these documents, he had personal knowledge of the statements of fact made in his affidavit;
• that the notes became due and payable through maturity or acceleration of payments because of default in payments as stated in the petition;
• that defendants failed to pay the sums due and owing under the terms of the notes and the overdrawn account and otherwise defaulted in the performance of their obligations to Whitney;
• that the notes are in default as stated in the petition;
• that the amounts due on the notes are the amounts as stated in the petition, plus additional accrued interest;
• that the checking account is overdrawn;
• that the amounts due on the overdrawn checking account are the amounts as stated in the petition; and
• that the indebtednesses of Garden Gate and Growers were personally guaranteed by Mr. and Mrs. Harris, respectively, through the Commercial Guaranties signed by them referred to in the petition.
Thereafter, defendants filed an opposition to the motion for summary judgment, including a memorandum with affidavits of Mr. and Mrs. Harris attached thereto. In their opposition, defendants argued that Whitney's motion for summary judgment was premature, as they had not been afforded the opportunity to conduct any discovery in the matter. They further argued that genuine issues of material fact remain regarding whether Whitney had failed to mitigate its damages, and the validity of the personal guaranty of Mrs. Harris.
Following a hearing held on December 15, 2016, the trial court orally granted Whitney's motion for summary judgment. A written judgment to this effect was signed on January 3, 2017 in favor of Whitney and against defendants as prayed for in the petition.[3] On January 11, 2017, defendants *780 filed a motion for a new trial, which was subsequently orally denied by the trial court at a hearing held on February 9, 2017. A written judgment denying the motion for a new trial was signed on February 14, 2017. This appeal followed.
LAW AND ANALYSIS
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Pouncy v. Winn-Dixie La., Inc. , 15-189 (La. App. 5 Cir. 10/28/15), 178 So.3d 603, 605. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). It shall be construed to accomplish these ends. Id. After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents, including the pleadings, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations and admissions, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3) and (4).
The initial burden on a motion for summary judgment is on the mover to show that no genuine issue of material fact exists and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). The burden then shifts to the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. Id. If the adverse party fails to do so, then summary judgment shall be granted. La. C.C.P. art. 966(A)(3).
Appellate courts review a judgment granting or denying a motion for summary judgment de novo , using the same criteria that governs the trial court's determination of whether a summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Bernard v. Ellis , 11-2377 (La. 7/2/12), 111 So.3d 995, 1002.
In American Bank v. Saxena , 553 So.2d 836, 846 (La. 1989), the Supreme Court held that summary judgment is an appropriate procedural device to enforce a negotiable instrument when the defendant establishes no defense against enforcement *781 thereof. Once the plaintiff, as holder of a promissory note, proves the maker's signature, or the maker admits it, the holder has made out his case by mere production of the note and is entitled to recover in the absence of any further evidence. Johnson v. Drury , 99-608 (La. App. 5 Cir. 6/2/00), 763 So.2d 103, 109-110 ; Thomas v. Bryant , 597 So.2d 1065, 1068 (La. App. 2nd Cir. 1992). Once the plaintiff has met his burden of proof, the burden shifts to the defendant to prove the existence of a triable issue of material fact. Saxena , 553 So.2d at 845-46. In order to defeat summary judgment, the defendant must assert a valid defense to liability on the note, not separate and distinct claims that are unrelated to the question of liability. Id. at 844.
ASSIGNMENT OF ERROR NUMBER ONE
Insufficient time to conduct discovery
In their first assignment of error, defendants argue that they are entitled as a matter of law to conduct discovery as to issues contained in Whitney's motion for summary judgment. Defendants argue that because Whitney filed its motion for summary judgment only 11 days after defendants' answer was filed, they could not properly defend the motion.
A plaintiff's motion for summary judgment may be filed at any time after the answer has been filed. La. C.C.P. art. 966(A). This Court has found that La. C.C.P. art. 966 does not give parties an absolute right to delay a decision on a motion for summary judgment until all discovery is complete. Musa v. Litton-Avondale Indus. , 10-627 (La. App. 5 Cir. 3/29/11), 63 So.3d 243, 251, writ denied , 11-1256 (La. 9/23/11), 69 So.3d 1163. Yet, the law does require that parties be given a fair opportunity to present their claim. Id. It is within the trial court's wide discretion to render a summary judgment, if appropriate, or to allow further discovery. Id. Unless a party shows a probable injustice, a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of fact. Simoneaux v. E.I. du Pont de Nemours & Co. , 483 So.2d 908, 913 (La. 1986).
In the present matter, though the time period between the filing of the petition and the hearing on the motion for summary judgment was relatively short, there was still sufficient time prior to the hearing on the motion for summary judgment for discovery to have been conducted. However, defendants failed to propound any discovery, nor did they file for a continuance of the hearing on the motion in an effort to take discovery. Upon review, under the particular facts and circumstances of this case, we find that the trial court did not abuse its wide discretion in considering the subject motion for summary judgment, rather than delaying consideration of the motion so as to allow discovery. In any event, as fully developed below, we find that defendants have not shown there are any genuine issues of material fact for which discovery is necessary, and thus, defendants have not shown that a probable injustice has occurred. This assignment of error is without merit.
REMAINING ASSIGNMENTS OF ERROR
Existence of genuine issues of material fact
In their remaining assignments of error, defendants argue that genuine issues of material fact remain with regard to Whitney's cause of action in this matter. Specifically, defendants argue that genuine issues of material fact remain regarding the amount of the outstanding debt owed, Whitney's failure to mitigate its damages, *782 and the validity of the personal guaranty of Mrs. Harris.
Amount of outstanding debt owed
Defendants first contend that the amount of the outstanding debt owed remains in dispute. They argue that they rejected the amount of the alleged indebtednesses set forth in Whitney's Statement of Uncontested Facts. Defendants allege that they have never been provided with, nor was there any documentation submitted into evidence of, a detailed accounting of the amount owed on the notes in light of payments made by defendants and in light of the March 2016 credit on Note 4.
In support of their motion for summary judgment, Whitney attached the affidavit of Mr. Berns, a Vice President of Whitney, who attested to the notes being in default and the exact amounts owed thereon by defendants, and the amount owed on the overdrawn checking account, and included as attachments to the affidavit copies of the notes, guaranties, and other loan documents. Upon review, we find Mr. Berns' affidavit with attachments to be sufficient evidence to support summary judgment under the particular facts of this case. The burden then shifted to defendants to prove that a genuine issue of material fact remained as to the amounts owed. However, defendants provided no specific allegations disputing the reported amounts owed, nor did they provide any evidence of any inaccuracies or discrepancies in the amounts asserted.
Additionally, the plea of payment is an affirmative defense, and the burden is upon the pleader to prove payment. In Louisiana, a defendant in a suit on a promissory note cannot establish payment as a defense by relying on the business records of his creditor. Franklin Credit Mgmt. Corp. v. Gray , 07-1433 (La. App. 4 Cir. 1/14/09), 2 So.3d 598, 605. In the present case, it was incumbent upon defendants to provide the necessary records to prove any payment on the notes, and they have failed to do so. Accordingly, we find that no genuine issue of material fact remains as to the amount owed.
Mitigation of Damages
Defendants next contend that a question of material fact exists surrounding Whitney's failure to mitigate its damages. According to defendants, as set forth in Mr. Harris' affidavit, Garden Gate and Growers procured a loan commitment from First Bank & Trust for the purpose of settling all outstanding debts owed to Whitney. On September 16, 2015, Mr. Harris met with representatives of Whitney, and the parties allegedly orally agreed that defendants would close their First Bank & Trust loan in 30 days and then retire their debt owed to Whitney. Mr. Harris was allegedly assured that the necessary paper work would be provided to him by Whitney the next day, but it was never received. Instead, on September 18, 2015, Mr. Harris was allegedly told via a telephone call from a Whitney representative that he needed to "leave Whitney Bank immediately" due to the closing of his brick and mortar store and his focusing on online retail. Defendants contend that, given the nature of the relationship between the parties, the actions of Whitney reneging on the acceptance of their agreement and instead accelerating the notes, over "an alleged overdue amount of $3,758.02," was unreasonable. Defendants thus argue that an issue of material fact remains regarding the potential reduction of defendants' liability and as to whether or not Whitney's actions were reasonable.
In this assignment, defendants rely on Whitney's alleged reneging on an alleged agreement with defendants. However, defendants have presented no documentation of any such agreement with Whitney. Mr. *783 Harris even admitted that there was no written agreement between the parties when he noted in his affidavit that instead of receiving documentation of the parties' agreement, he received a phone call from Whitney telling him to leave Whitney immediately. In opposition to Whitney's claims, Mr. Harris relies solely on the alleged oral agreement between the parties. However, La. R.S. 6:1122 of the Louisiana Credit Agreement Statute provides:
A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor. (Emphasis added.)
As such, any oral credit agreement between the parties is unenforceable. Further, defendants have provided nothing that precluded them from making payment on the debts in question. Accordingly, no issue of material fact remains as to the potential reduction of defendants' liability.
Furthermore, we find that the doctrine of mitigation of damages is inapplicable in the present case. La C.C. art. 2002 provides:
An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced.
"This Article adjusts the conflict of interests that would otherwise exist when an obligee neglects to mitigate his damages and thereby exposes the obligor to further liability for consequences resulting from the obligor's failure to perform that were reasonably avoidable by the obligee." Lombardo v. Deshotel , 94-1172 (La. 11/30/94), 647 So.2d 1086, 1092. The duty of an injured party to mitigate his damages presumes that further damage has occurred following the tort or breach of contract. Schroeder v. DiPascal Cabinet Co. , 467 So.2d 1380, 1382 (La. App. 5th Cir. 1985).
Considering the foregoing, this Court in First Bank & Tr. v. Redman Gaming of La., Inc. , 13-369 (La. App. 5 Cir. 12/12/13), 131 So.3d 224, 230, rejected a similar argument that a bank failed to mitigate its damages following the granting of summary judgment in favor of the bank. In First Bank , the defendant/seller, pursuant to a purchase agreement, agreed to repurchase certain assets upon the buyer's default of its promissory note with the bank. Id. at 226. On appeal, the defendant argued that the bank failed to mitigate its damages when it failed to first pursue the buyer in order to reduce the amount of the defendant's liability. This Court found the doctrine inapplicable because there was no evidence the bank suffered further actual damages, nor had the defendants' liability increased beyond what was contemplated by the agreement. Id. Similarly, in the present case, defendants' liability has not increased beyond what is set forth in the notes and guaranties, and there is no evidence that Whitney suffered further actual damages. Accordingly, we find this doctrine inapplicable to the present case. This argument is without merit.
Personal guaranty of Mrs. Harris
Finally, defendants aver that a question of material fact exists regarding the validity of Mrs. Harris' personal guaranty. Mrs. Harris served as the Secretary of a separate business, Oasis Horticultural Services, Inc., and often signed business documents on behalf of Oasis. Mrs. Harris claims that on multiple occasions, she was given the signature pages of financing documents to sign, but was not given the whole documents. When signing for the present guaranties, she inquired as to the contents of the documents and alleges that she was told by a representative of *784 Whitney that the bank "simply needed a second signature for their records." Mrs. Harris attested that she believed that she was signing the documents solely in her capacity as secretary of Oasis and did not understand that she was signing guaranties of debt for Garden Gate and Growers.
It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, did not understand it, or that the other party failed to explain it to him. Aguillard v. Auction Management Corp. , 04-2804 (La. 6/29/05), 908 So.2d 1, 17. Unilateral error does not vitiate consent if the reason for the error was the complaining party's inexcusable neglect in discovery of the error. Scott v. Bank of Coushatta , 512 So.2d 356, 361 (La. 1987). A defendant bears the burden of proving the affirmative defense of error vitiating consent. Pannagl v. Kelly , 13-823 (La. App. 5 Cir. 5/14/14), 142 So.3d 70, 76.
In the present case, there is no dispute that Mrs. Harris signed the guaranties. She cannot now seek to avoid the obligations contained therein by claiming that she did not receive the full documents, or that she did not read, understand, or know what was in the documents, or know for what company she was signing on behalf of. Therefore, we find that defendants failed to bear their burden that Mrs. Harris executed the guaranties in error. This argument is without merit.
In summary, considering the foregoing, we find that defendants failed to assert any defenses to liability on the notes and the overdrawn checking account and thereby failed to raise a genuine issue of material fact. These assignments of error are without merit.
CONCLUSION
For the foregoing reasons, because no genuine issue of material fact remains and Whitney is entitled to judgment as a matter of law, the judgment of the trial court granting summary judgment in favor of Whitney is affirmed.
AFFIRMED

Specifically, Whitney asserted that Garden Gate, Mr. Harris, and Mrs. Harris are obligated and indebted to Whitney, in solido , for the following amounts:
• The principal sum of $1,100,000.00 due on Note 1, plus accrued interest thereon through July 18, 2016, in the amount of $37,592.57, plus default interest accruing on the unpaid principal balance commencing on July 19, 2016, at a per diem of $641.666, until paid, and plus late charges of $1,290.09.
• The principal sum of $74,094.33 due on Note 2, plus accrued interest thereon through July 18, 2016, in the amount of $3,360.57, plus default interest accruing on the unpaid principal balance commencing on July 19, 2016, at a per diem of $37.047, until paid, and plus late charges of $1,879.00.
• The principal sum of $72,386.04 due on Note 3, plus accrued interest thereon through July 18, 2016, in the amount of $2,837.83, plus default interest accruing on the unpaid principal balance commencing on July 19, 2016, at a per diem of $36.193, until paid, and plus late charges of $4,078.91.
• The overdrawn account sum of $25,845.96, plus interest, fees, charges and other amounts as stated in the account agreement.
Whitney further asserted that Growers, Garden Gate, and Mr. and Mrs. Harris are obligated and indebted unto Whitney, in solido , in the principal sum of $60,485.14 due on Note 4, plus accrued interest thereon through July 18, 2016, in the amount of $3,278.77, plus default interest accruing on the unpaid principal balance commencing on July 19, 2016, at a per diem of $30.243, until paid, plus late charges of $788.00.

As additional security on the notes, Growers executed a Multiple Indebtedness Mortgage in favor of Whitney's predecessor-in-interest on immovable property located in Jefferson Parish. Growers also executed an Assignment of Leases and Rents in favor of Whitney's predecessor-in-interest related to the same immovable property located in Jefferson Parish. Further, both Garden Gate and Growers executed various Commercial Surety Agreements in which they granted security interests to Whitney in certain movable property.

Specifically, the judgment first condemned Garden Gate, Mr. Harris, and Mrs. Harris, jointly, severally, and in solido , to pay to Whitney the following amounts:
a) the principal sum of $1,100,000.00, plus accrued interest thereon through July 17, 2016 in the amount of $37,485.63, plus accrued default interest from July 18, 2016 through September 26, 2016 in the amount of $46,200.00, plus interest continuing to accrue thereafter at the default rate of 21 percent per annum , until paid, plus late charges of $1,290.09;
b) the principal sum of $74,094.33, plus accrued interest thereon through July 17, 2016 in the amount of $3,350.80, plus default interest from July 18, 2016 through September 26, 2016 in the amount of $2,667.39, plus interest continuing to accrue thereafter at the default rate of 18 percent per annum , until paid, plus late charges of $2,442.70;
c) the principal sum of $72,386.04, plus accrued interest thereon through July 17, 2016 in the amount of $2,829.29, plus default interest from July 18, 2016 through September 26, 2016 in the amount of $2,605.89, plus interest continuing to accrue thereafter at the default rate of 18 percent per annum , until paid, plus late charges of $4,078.91;
d) the overdrawn account sum of $25,845.96, plus interest, fees, charges and other amounts as stated in the account agreement; and
e) reasonable attorney's fees, all legal expenses and collection costs, and all costs of the proceeding.
The judgment further condemned Garden Gate, Growers, Mr. Harris, and Mrs. Harris, jointly, severally, and in solido , to pay to Whitney the principal sum of $60,485.14, plus accrued interest thereon through July 17, 2016 in the amount of $3,269.53, plus default interest from July 18, 2016 through September 26, 2016 in the amount of $2,177.47, plus interest continuing to accrue thereafter at the default rate of 18 percent per annum , until paid, plus late charges of $945.00, together with reasonable attorney's fees, all legal expenses and collection costs, and all costs of the proceeding.
Additionally, the judgment found in favor of Whitney and against defendants, respectively, recognizing, maintaining, and enforcing the Multiple Indebtedness Mortgage, the Assignment of Leases and Rents, and the Commercial Security Agreements.