EMILE, MICHELE, BRITTANY AND CECILIA CHACON

VERSUS

REGAL REMODELERS, L.L.C., ET AL

NO. 23-CA-174

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 78,174, DIVISION "C"
HONORABLE J. STERLING SNOWDY, JUDGE PRESIDING

January 31, 2024

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Stephen J. Windhorst

**AFFIRMED IN PART; REVERSED IN PART;**
**REMANDED WITH INSTRUCTIONS**
    **SJW**
    **SMC**
    **JGG**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
EMILE, MICHELE, BRITTANY, AND CECILIA CHACON
    Robert L. Redfearn, Jr.
    Kelly A. Gismondi

COUNSEL FOR DEFENDANT/APPELLEE,
POWERPAY, LLC
    Timothy Braden Riley

**WINDHORST, J.**

Appellants/plaintiffs, Emile, Michelle, Brittany, and Cecilia Chacon, appeal the trial court's December 12, 2022 judgment that sustained the peremptory exception of no cause of action filed by defendant, PowerPay LLC ("PowerPay"), dismissing plaintiffs' claims against PowerPay with prejudice, and denying plaintiffs' request for leave to amend. For the following reasons, we affirm in part, reverse in part, and remand this case to the trial court with instructions.

**PROCEDURAL HISTORY and FACTS**

Emile and Michele Chacon are the owners of and resided in the immovable property located at 425 Belle Chase Drive in LaPlace ("the home"), with Brittany and Cecilia. The home sustained damage from Hurricane Ida, which made landfall in Louisiana on August 29, 2021.

On September 9, 2021, Emile and his daughter Brittany met with Tanweer Bhatti ("Bhatti"), the principal member of Regal Remodelers, LLC ("Regal"), and entered into an agreement wherein Regal would repair the home. Bhatti and/or Regal agreed to perform the repair work for the amount paid by plaintiffs' insurer for damage caused by Hurricane Ida. On the same day, plaintiffs entered into a contract with Bhatti and/or Regal to perform additional remodeling work in the amount of $89,700.00, and on September 22, 2021, the parties signed an Authorization for Additional Work in the amount of $30,000.00. On September 27, 2021, upon receiving a telephone call and email from Bhatti, Brittany electronically signed documents for a $60,000 loan with PowerPay. The PowerPay loan documents included an authorization to immediately disburse the funds to Regal. On September 28, 2021, the funds from the loan were disbursed to Bhatti and Regal.

In early February 2022, Bhatti and/or Regal informed plaintiffs' insurer that the repair work on the home was completed. Plaintiffs' insurer conducted a virtual inspection which was performed by a Regal employee using a cell phone camera to

show the work allegedly completed. Plaintiffs were informed by Bhatti and Regal that the repair work was completed. Plaintiffs moved out of the rental home and back into the home on February 19, 2022.

After moving back into the home, plaintiffs became aware that the repair and remodeling work on the home was not completed and had been performed in a negligent and defective manner and additional damage was done to the home. A third party subsequently performed an inspection of the home and informed plaintiffs that it would cost at least $117,000 to properly repair the home, including the remodeling work performed by Bhatti and/or Regal.

On July 8, 2022, plaintiffs filed a petition for damages against several defendants, including PowerPay.[1] As to PowerPay, plaintiffs alleged that they incurred damage from PowerPay's negligence in the disbursement of the loan funds in the amount of $60,000 to Bhatti and/or Regal on September 28, 2021. Based on PowerPay's negligence, plaintiffs seek to have Brittany released from liability for repayment of the loan and recovery of all payments made on the loan, both principal and interest.

On September 8, 2022, PowerPay filed an exception of no cause of action, arguing that it was unclear from the petition what legal theory plaintiffs were asserting against it. To the extent the petition alleged a negligence claim, plaintiffs failed to enunciate facts that would meet the elements of that cause of action. PowerPay averred plaintiffs would not be able to cure any defect in the petition and therefore, they should not be permitted to amend the petition pursuant to La. C.C.P. art. 934.

Plaintiffs filed an opposition and attached thereto the PowerPay loan documents signed by Brittany. Plaintiffs averred that paragraph 8 of the petition

---

[1] On August 4, 2022, plaintiffs filed a first amended and supplemental petition for damages, and on November 14, 2022, plaintiffs filed a second amended and supplemental petition for damages. Neither amendment added or changed any of the allegations against PowerPay.

asserted the facts against PowerPay and paragraph 44 stated the cause of action against PowerPay. Plaintiffs argued that the petition "concisely and directly" alleged negligent and wrongful acts by PowerPay in pressuring Brittany to sign electronic loan documents and in disbursing those funds to Bhatti and/or Regal when PowerPay knew the work on the home was not completed. Plaintiffs averred that they alleged sufficient facts to support a claim of negligence against PowerPay. Further, plaintiffs contended that the alleged facts are sufficient to suggest collusion and/or conspiracy between PowerPay and Bhatti to take advantage of plaintiffs. Therefore, plaintiffs argued they should be allowed to conduct discovery to determine the nature and extent of the relationship between Bhatti and PowerPay prior to Brittany signing the PowerPay loan documents.[2] Alternatively, assuming the petition did not state a valid cause of action against PowerPay, plaintiffs asserted that pursuant to La. C.C.P. art. 934, they should be permitted to amend their petition for damages.

On December 6, 2022, after argument of counsel, the trial court took the matter under advisement. The PowerPay loan documents were referred to during the hearing, but were not offered or admitted into evidence at the hearing. On December 12, 2022, the trial court sustained the exception of no cause of action, denied plaintiffs' request to amend the petition, and dismissed plaintiffs' claim against PowerPay with prejudice. This appeal followed.

**LAW and LEGAL ANALYSIS**

In their first assignment of error, plaintiffs contend the trial court erred in sustaining the exception of no cause of action and dismissing plaintiffs' claims with prejudice.

Appellate courts review a judgment sustaining an exception of no cause of action *de novo* because the exception raises a question of law, and the trial court's

---

[2] Plaintiffs did not argue or pursue an argument that the petition states a cause of action for collusion and/or conspiracy at the hearing, nor do plaintiffs assert or brief this argument on appeal. Nevertheless, the petition does not state a cause of action for collusion and/or conspiracy.

decision is based only on the sufficiency of the petition. <u>Scanlan v. MBF of Metairie, LLC</u>, 21-323 (La. App. 5 Cir. 03/23/22), 337 So.3d 562, 565; <u>Succession of Gendron</u>, 17-216 (La. App. 5 Cir. 12/27/17), 236 So.3d 802, 807.

The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. <u>Jackson v. Jefferson Parish School Board</u>, 21-260 (La. App. 5 Cir. 02/02/22), 336 So.3d 561, 564. The exception of no cause of action is triable on the face of the petition. No evidence may be introduced to support or controvert an exception of no cause of action. La. C.C.P. art. 931. Therefore, the court reviews the petition and accepts the well-pleaded allegations of fact in the petition as true. <u>Gaudet v. Jefferson Parish</u>, 12-707 (La. App. 5 Cir. 03/27/13), 116 So.3d 691, 693. Because Louisiana utilizes a system of fact pleading, it is not necessary for a plaintiff to plead a theory of the case in the petition; however, mere conclusions of the plaintiff unsupported by the facts do not set forth a cause of action. <u>Cangelosi v. Jefferson Parish Council</u>, 22-338 (La. App. 5 Cir. 12/14/22), 356 So.3d 1124, 1127, <u>writ denied</u>, 23-36 (La. 03/14/23), 357 So.3d 827.

The mover has the burden of demonstrating that the petition fails to state a cause of action. <u>Gauthreaux v. City of Gretna</u>, 22-424 (La. App. 03/29/23), 360 So.3d 930, 934, <u>writ denied</u>, 23-606 (La. 06/21/23), 363 So.3d 254. The pertinent question is whether, in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's behalf, the petition states a valid cause of action for relief. <u>Pinegrove Elec. Supply Co., Inc. v. Cat Key Const., Inc.</u>, 11-660 (La. App. 5 Cir. 2/28/12), 88 So.3d 1097, 1100. Whether the plaintiff can prove the allegations set forth in the petition is not determinative of the exception of no cause of action. <u>Clulee v. St. Pierre</u>, 13-881 (La. App. 5 Cir. 5/14/14), 142 So.3d 83, 86.

In the instant case, plaintiffs' petition, consisting of 45 paragraphs, alleges numerous causes of action against various defendants. Plaintiffs' allegations against defendant PowerPay are set forth in paragraphs 8 and 44, as follows:

8.

On September 27, 2021, Bhatti called Brittany Chacon and told her that he had sent her an email with an attachment which she needed to open immediately. The attachment was electronic documentation from PowerPay and American Heritage Credit Union for a $60,000 loan. There was another person on the call who Brittany understood to be a banker with either PowerPay or American Heritage, but who did not give his name or whose name she cannot recall. Bhatti told Brittany Chacon the loan was necessary so he could buy materials to begin the repair and remodeling work for the Home. He also told her that the loan had to be taken out by her, but Regal would reimburse the monthly payments until the job was completed and would pay off the loan from the Chacons' insurance payments. The third person on the call directed Brittany to the electronic signature pages and told her where [she] needed to sign. He did not ask any questions of her and provided no information with respect to the loan. The documents had been pre-filled in with personal information about Brittany Chacon provided by someone other than Brittany Chacon. Brittany was pressured into signing without having time to read the documents or comprehend their meaning. The third person on the phone provided no information to Brittany except directions of where to sign. The documentation provided that the loan proceeds would be paid by PowerPay to Regal upon authorization from Brittany that the work was substantially complete, but the documentation Brittany was pressured into signing included an Authorization to pay Regal the $60,000 immediately even though it was obvious the work was not substantially completed and had not begun at that time. Nonetheless, on or about September 28, 2021, PowerPay paid the loan proceeds to Bhatti and Regal. Regal reimbursed Brittany for the monthly loan payments for November and December 2021 and January and March 2022. After March 2022, Regal stopped reimbursing Brittany Chacon for the monthly payments and has not paid off the loan.

## POWERPAY AND AMERICAN HERITAGE CREDIT UNION[3]

44.

PowerPay and American Heritage knew or should have known that the $60,000 loan proceeds should not have been paid to Regal and/or Bhatti and that Brittany Chacon was not the proper party borrower but that Regal and/or Bhatti was the true borrower. PowerPay acted as agent and/or broker for American Heritage. As a result of their negligence, Brittany Chacon seeks release from liability for repayment of the loan and recovery of all payments made on the loan, both principal and interest.

---

[3] A review of the record shows that American Heritage Credit Union filed an exception of lack of subject matter jurisdiction; however, the trial court's ruling on the exception is not contained in the record. In its brief, PowerPay contends that the trial court granted American Heritage Credit Union's exception.

*Negligence*

Plaintiffs argue that the trial court erred in finding that the petition does not state a cause of action for negligence against PowerPay. Plaintiffs contend that the trial court correctly found that their petition asserted that PowerPay owed a duty to disburse the funds from the loan to the proper party. However, plaintiffs argue that the trial court incorrectly found that the petition did not state a breach of that duty. Plaintiffs aver that the allegations are sufficient to allege that PowerPay breached a duty by releasing the funds to Bhatti and/or Regal at the time the funds were released.

Specifically, plaintiffs contend that PowerPay, pursuant to the loan documents attached to their opposition, should not have disbursed the funds until "the sooner of (i) the date of Your signature affirming the 'Completion of the Project' shown on the 'Borrower Payment Authorization,' or (ii) one hundred eighty (180) days after execution of this Loan Agreement." Plaintiffs assert that their petition alleges that "it was obvious that the work was not substantially completed and had not begun at this time [of the loan disbursement]." Additionally, plaintiffs contend that PowerPay knew or should have known that Brittany was not affirming the completion of the project in signing the documents because, as alleged in the petition, Bhatti informed Brittany during the phone conversation that he needed the loan proceeds to begin the project and the third party PowerPay was also on the phone call. Plaintiffs further contend that PowerPay clearly knew 180 days had not passed since the execution of the loan documents and PowerPay had a duty to comply with its own written contract.

Plaintiffs further assert that because the petition's well-pled allegations assert that the PowerPay loan documents were filled in by someone other than Brittany and Brittany signed the loan documents, including the authorization to immediately release the funds, this court does not need to review and/or interpret extrinsic evidence (*i.e.*, the PowerPay loan documents). Plaintiffs argue that based on the allegations in the petition, it was immediately obvious to the PowerPay

representative, who was present on the phone call with Brittany and Bhatti, that the conditions of the authorization were not met, and that the loan should have been made to Bhatti, not Brittany (the "wrong borrower" theory).

In general, to prove a claim for negligence under La. C.C. art. 2315, a plaintiff must satisfy five elements under the duty-risk analysis: (1) the defendant had a duty to conform his conduct to the appropriate standard of care (duty element); (2) the defendant failed to conform to that duty (breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of plaintiff's injuries (scope of protection argument); and (5) actual damages (damages element). Smith v. Great Am. Ins. Co., 20-377 (La. App. 5 Cir. 05/26/21), 325 So.3d 495, 498.

PowerPay contends that plaintiffs' petition failed to allege (1) a duty owed by PowerPay; (2) any breach of a duty by PowerPay; and/or (3) that any of PowerPay's actions constituted a cause-in-fact of plaintiffs' damages. PowerPay maintains that accepting the allegations in the petition as true, (1) Brittany was presented with and signed the loan documents giving PowerPay express authorization to make immediate payment of the loan proceeds to Bhatti; (2) Brittany signed the loan documents outlining her obligations on the loan; and (3) the only person obligated on the loan was Brittany. PowerPay asserts that the petition does not allege how PowerPay deviated from its duty by relying on the representations in the loan documents. PowerPay further avers that the petition does not allege how any of PowerPay's actions as pled in the petition are a cause-in-fact of plaintiffs' damages.

In the instant case, accepting the allegations pled in the petition as stated in paragraphs 8 and 44 as true, Brittany signed the PowerPay loan documents, which contained a condition (*i.e.*, substantial completion) for disbursement.[4] However,

---

[4] Because the PowerPay loan documents were not attached to or incorporated into the petition, this court does not opine as to whether the loan documents contained any conditions for disbursement or the immediate release of funds. Additionally, this court did not review or consider the loan documents attached and referred

Brittany also signed an authorization to immediately disburse the funds to Regal and the funds were disbursed to Regal the day after Brittany signed the loan documents. Accordingly, upon *de novo* review, we find plaintiffs have not sufficiently alleged a cause of action for negligence against PowerPay regarding the timing of the disbursement of the funds to Regal and/or that the loan should have been made to Bhatti, not Brittany (the "wrong borrower" theory).

### *Consent vitiated by error, fraud, or duress*

Plaintiffs also contend that the petition sufficiently alleges that any consent by Brittany in signing the loan documents and the authorization for PowerPay to disburse the funds immediately to Bhatti and/or Regal was vitiated by error, fraud or duress. Specifically, plaintiffs argue that the petition alleges that (1) Brittany did not fill in the information in the agreement; (2) Brittany was not given time to read or understand the agreement; (3) the agreement was not explained to Brittany; (4) Brittany was told the loan had to be taken out by her, but Bhatti would reimburse all monthly payments and pay off the loan; (5) a PowerPay representative was on the call and provided no information to Brittany except where to sign; and (6) Brittany was pressured into signing the agreement. Plaintiffs contend that during the phone call between Bhatti and Brittany, wherein a PowerPay representative was present, it was clear to everyone that no work on the home had been started. Plaintiffs contend that these facts as alleged in the petition are sufficient to show Brittany's consent was vitiated by fraud, error, or duress.

PowerPay contends that plaintiffs did not allege any facts in their petition that Brittany's consent was vitiated by error or fraud. Further, PowerPay avers that plaintiffs did not allege any facts that Brittany feared for her person, property, or reputation due to any action by PowerPay.

---

to by plaintiffs in their opposition to the exception of no cause of action and in the brief before this court but not offered or admitted in the trial court. No evidence may be introduced to support or controvert an exception of no cause of action. La. C.C.P. art. 931.

A contract is formed by the consent of the parties. La. C.C. art. 1927. However, consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948. Where the consent to a contract has been vitiated by error, fraud, or duress, such a vice of consent renders a contract a relative nullity. La. C.C. art. 2031; Hawkins v. Willow Inc., 15-71 (La. App. 5 Cir. 11/19/15), 181 So.3d 210, 217, writ denied, 15-2326 (La. 02/19/16), 187 So.3d 463.

Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. C.C. art. 1953. Fraud may also result from silence or inaction. Id. Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent. La. C.C. art. 1955. However, fraud does not vitiate consent when the party against whom fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. Nevertheless, this exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations. La. C.C. art. 1954.

Therefore, there are three elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to a cause of the contract. Shelton v. Standard/700 Associates, 01-587 (La. 10/16/01), 798 So.2d 60, 64. In pleading fraud, the circumstances constituting fraud must be alleged with particularity. La. C.C.P. art. 856.

Consent is also vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation. Age, health, disposition, and other personal circumstances

of a party must be taken into account in determining the reasonableness of the fear. La. C.C. art. 1959; Gerdes v. Brisco, 22-561 (La. App. 5 Cir. 06/07/23), 367 So.3d 823, 830, writ denied, 23-936 (La. 10/31/23), 372 So.3d 812. Duress is to be considered in light of the subjective characteristics of the person whose consent is in question; however, La. C.C. art. 1959 also provides that duress must be of such a nature as to cause a *reasonable fear* of unjust and considerable injury to a party's property or reputation in order to constitute legal duress. Id. However, a threat of doing a lawful act or exercising a right does not constitute legal duress. La. C.C. art. 1962.

Error only vitiates consent when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C.C. art. 1949. Error vitiates consent in one of two ways: mutually, where both parties are mistaken, or unilaterally, where only one party is mistaken. Peironnet v. Matador Res. Co., 12-2292 (La. 06/28/13), 144 So.3d 791, 807. Where there is no consent, there is no meeting of the minds, and therefore, no enforceable contract. Id. When consent is vitiated by bilateral error or unilateral error, the relief granted may be either rescission, or alternatively, reformation of the contract to reflect the parties' true intent. Id. Although rescission is allowed if the error is unilateral, the error must be excusable, meaning "the party in error did not fail to take elementary precautions that would have avoided his falling into error." Semco, LLC v. Grand Ltd., 16-342 (La. App. 5 Cir. 05/31/17), 221 So.3d 1004, 1029, writ denied, 17-1291 (La. 11/06/17), 229 So.3d 475. Contractual negligence, such as failure to read a contract one signed, is not excusable, and as such, rescission is not an appropriate remedy. Id.

It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that she did not read it, did not understand it, or that the other party failed to explain it to her.

Whitney Bank v. Garden Gate New Orleans, L.L.C., 17-362 (La. App. 5 Cir. 12/27/17), 236 So.3d 774, 784, writ denied, 18-174 (La. 03/23/18), 239 So.3d 298, *citing* Aguillard v. Auction Management Corp., 04-2804 (La. 06/29/05), 908 So.2d 1, 17. Unilateral error does not vitiate consent if the reason for the error was the complaining party's inexcusable neglect in discovery of the error. Whitney Bank, 236 So.3d at 784, *citing* Scott v. Bank Coushatta, 512 So.2d 356, 361 (La. 1987).

After *de novo* review of the petition, accepting plaintiffs' allegations as pled in paragraphs 8 and 44 of the petition as true, we find the petition does not sufficiently allege facts that Brittany's consent in signing the PowerPay loan documents, including the authorization to immediately disburse the funds to Regal, was vitiated by error, fraud, or duress. We find that the allegations as pled in the petition (1) do not allege with particularity the circumstances constituting any alleged fraud by PowerPay; (2) do not sufficiently allege a bilateral or unilateral excusable error;[5] and (3) do not sufficiently allege that Brittany signed the loan documents, including the authorization for immediate disbursement to Regal, under duress due to any actions by PowerPay.

### *Amendment*

In their second assignment of error, plaintiffs contend that assuming the petition did not sufficiently state any cause of action against PowerPay, the trial court erred in denying their request for leave to amend the petition. We agree.

La. C.C.P. art. 934 provides that "[w]hen the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the

---

[5] Brittany's failure to read or understand the PowerPay loan documents, including the authorization to immediately disburse funds to Regal, prior to signing is not an excusable error that would vitiate consent. Additionally, PowerPay's alleged failure to explain the loan documents to Brittany is not an excusable error.

action, claim, demand, issue, or theory shall be dismissed." Since the grounds of the objection *may* be removed by amendment of the petition, La. C.C.P. art. 934 mandated that the trial court allow plaintiffs an opportunity to amend their petition. See <u>Sutton v. Adams</u>, 22-1673 (La. 03/07/23), 356 So.3d 1005, 1007 (*per curiam*). Consequently, we find that the trial court erred in dismissing plaintiffs' claims with prejudice without allowing plaintiffs an opportunity to amend the petition.

**DECREE**

For the above stated reasons, we affirm the portion of the trial court's judgment sustaining PowerPay's exception of no cause of action, and reverse the portions of the judgment dismissing plaintiffs' claims with prejudice and denying plaintiffs' request to amend the petition pursuant to La. C.C.P. art. 934. We further remand this case to the trial court with instructions to allow plaintiffs an opportunity to amend the petition for damages to remove the grounds for the objection, if they are able to do so, within a reasonable amount of time pursuant to La. C.C.P. art. 934.

<u>**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JANUARY 31, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 23-CA-174

**E-NOTIFIED**
40TH DISTRICT COURT (CLERK)
HONORABLE J. STERLING SNOWDY (DISTRICT JUDGE)
KELLY A. GISMONDI (APPELLANT)      LUKE P. LAROCCA (APPELLANT)      PAULA M. WELLONS (APPELLEE)
KELLEN J. MATHEWS (APPELLEE)

**MAILED**
ROBERT L. REDFEARN, JR. (APPELLANT)      TRAVIS B. WILKINSON (APPELLEE)      TIMOTHY BRADEN RILEY (APPELLEE)
ATTORNEY AT LAW                          ATTORNEY AT LAW                     ATTORNEY AT LAW
1100 POYDRAS STREET                      1555 POYDRAS STREET                 COZEN O'CONNOR
30TH FLOOR                               SUITE 2000                          1221 MCKINNEY STREET
NEW ORLEANS, LA 70163                    NEW ORLEANS, LA 70112               SUITE 2900
                                                                            HOUSTON, TX 77006

E. GREGG BARRIOS (APPELLEE)              JOHN D. POWERS (APPELLEE)
ATTORNEY AT LAW                          JOSHUA C. POPULUS (APPELLEE)
ONE SHELL SQUARE                         ATTORNEYS AT LAW
701 POYDRAS STREET                       POST OFFICE BOX 15948
SUITE 4500                               BATON ROUGE, LA 70895
NEW ORLEANS, LA 70139